## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN DOE,<br><br>    Plaintiff,<br><br>  v.<br><br>SEAN COMBS, BAD BOY ENTERTAINMENT LLC, BAD BOY RECORDS LLC, BAD BOY ENTERTAINMENT HOLDINGS INC., BAD BOY PRODUCTIONS HOLDINGS INC., BAD BOY BOOKS HOLDINGS INC., DOE CORPORATIONS 1-10, AND DOE DEFENDANTS 11-20,<br><br>    Defendants. | COMPLAINT<br><br>JURY TRIAL DEMANDED<br><br>CASE NO: 1:25-CV-00996-JLR |

Plaintiff JOHN DOE ("Plaintiff"), by and through his attorneys, The Bloom Firm, brings this action against Defendants. Plaintiff alleges upon knowledge concerning his own experience and upon information and belief as to all other matters.

## **PRELIMINARY STATEMENT**

1. Defendant Sean Combs ("Combs"), a prominent entertainment mogul, exploited his power to sexually, physically, and psychologically abuse Plaintiff over more than five harrowing years. Combs caused Plaintiff's life to spiral into a living nightmare.

2. Plaintiff was, at all relevant times, a Las Vegas-based entertainer who aspired to become a musician. Knowing that Plaintiff desperately sought a breakthrough in the music industry, Combs enticed Plaintiff with fraudulent promises of a career in the music industry. Combs used his false promises of career advancement as weapons, trapping Plaintiff in a vortex of exploitation and fear. Combs did not follow through with these promises; instead, Combs subjected Plaintiff to a relentless pattern of drugging, sexual assaults, death threats, clandestine

recording, blackmail and psychological manipulation that far exceeded any bounds of consent or professionalism.

3.      Combs dehumanized Plaintiff and reduced him to a mere object for Combs' own amusement and to satisfy his own sexual fetishes. Combs gravely exploited Plaintiff, effectively imprisoning him and controlling him through surreptitious surveillance and filming. Combs' recordings were not just blatant invasions of Plaintiff's privacy, but he wielded them as tools of blackmail, forcing Plaintiff to continuously comply with his perverse sexual demands. Combs covertly drugged Plaintiff to strip Plaintiff of his ability to resist his sexual demands.

4.      Bad Boy Entertainment, Combs' production company, facilitated Combs' calculated abuse and played a significant part in Combs' ruthless scheme to exploit Plaintiff.

## PARTIES

5.      Plaintiff JOHN DOE currently resides in Las Vegas, Nevada. At all relevant times described in this Complaint, Plaintiff resided in California and/or Nevada.

6.      Upon information and belief, Defendant SEAN COMBS (also known professionally as P. Diddy, Puff Daddy, Diddy and other pseudonyms) previously resided in California and has extensive ties to California, Florida, and New York. As of December 2024, Combs is incarcerated within the Metropolitan Detention Center in Brooklyn, New York. Combs is a well-known recording artist, record producer, and entrepreneur.

7.      Upon information and belief, Defendant BAD BOY ENTERTAINMENT LLC is a New York corporation with its principal place of business in New York. It was founded and owned by Combs.

8.      Upon information and belief, Defendant BAD BOY RECORDS LLC is a Delaware limited liability company that is headquartered in New York and/or California and is a subsidiary of and/or a successor-in-interest to Bad Boy Entertainment LLC. It was founded and owned by Combs.

9.      Upon information and belief, Defendant BAD BOY ENTERTAINMENT HOLDINGS INC. is a New York corporation with its principal place of business in California.  It is a subsidiary of and/or a successor-in-interest to Bad Boy Entertainment LLC. It was founded and owned by Combs.

10.      Upon information and belief, Defendant BAD BOY PRODUCTIONS HOLDINGS INC. is a New York corporation.  It is a subsidiary of and/or a successor-in-interest to Bad Boy Entertainment LLC. It was founded and owned by Combs.

11.      Upon information and belief, Defendant BAD BOY BOOKS HOLDINGS INC. is a New York corporation.  It is a subsidiary of and/or a successor-in-interest to Bad Boy Entertainment LLC. It was founded and owned by Combs. Bad Boy Entertainment LLC, Bad Boy Records LLC, Bad Boy Entertainment Holdings Inc., Bad Boy Productions Holdings Inc., and Bad Boy Books Holdings Inc. shall be referred collectively herein as "Bad Boy Defendants."

## JURISDICTION AND VENUE

12.      This Court has jurisdiction pursuant to 28 U.S.C. §§1331 and 1343, as this action asserts violations of 18 U.S.C. § 1591 *et seq*. and 18 U.S.C. § 1589 *et seq*., and therefore raises federal questions regarding the deprivation of Plaintiff's rights. This Court has supplemental jurisdiction over Plaintiff's related claims arising under state and city law pursuant to 28 U.S.C. § 1367(a).

13.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action occurred in this District, and Defendants Sean Combs and Bad Boy Records conduct substantial business and/or are domiciled in this District.

## FACTUAL ALLEGATIONS

### Combs Hired Plaintiff to Strip and Dance

14.    In or around 2007, Plaintiff was recognized as one of the premier entertainers in the Las Vegas adult entertainment scene. Plaintiff worked with multiple adult entertainment agencies and received his professional engagements through these agencies.

15.    As a popular and frequently sought-out entertainer, Plaintiff maintained high professionalism. Both Plaintiff and the clients operated under pseudonyms, such that Plaintiff did not know the identity of the person he was meeting until he arrived at the engagement and met the client.

16.    Both Plaintiff and his agencies clearly communicated his boundaries and limitations to the clients at the outset of his engagements.

17.    In or around 2007, Plaintiff was booked through one of his agencies to perform a strip show in a hotel room in Las Vegas. In accordance with standard procedures, Plaintiff did not know who he was meeting until he arrived. On this occasion, the client was Combs.

18.    When Plaintiff arrived, Combs conducted a full-body pat down.

19.    Plaintiff commenced his performance, which consisted of dancing and stripping. When the performance concluded, Combs paid Plaintiff $1,500.

20.    In the following months, Combs booked Plaintiff for at least two additional engagements in Las Vegas through Plaintiff's agencies. As was the standard procedure, the client's name was not revealed ahead of time, and Plaintiff did not know he would be meeting Combs until he arrived at the hotel room. Each time, Combs was present in the room with a different woman.

21.    On these additional engagements through Plaintiff's agencies, Combs offered Plaintiff beverages, which Plaintiff consumed. Combs also asked Plaintiff to apply baby oil to Plaintiff's skin during the performances, which Plaintiff did. After applying the baby oil, Plaintiff

became unusually sleepy, disoriented, confused, exhausted, drowsy, weak, confused, sluggish, numb and alarmed by the sensation of being trapped in his own body. Plaintiff felt a heavy sensation behind his eyes and felt that moving his body became more difficult and exhausting.

22.     While Plaintiff was in this disoriented state, Combs instructed him to perform acts that were outside the scope of the agreed-upon performance and limitations set by Plaintiff and his agency. Combs instructed Plaintiff to engage in acts such as masturbating while Combs and the woman engaged in sexual intercourse. Plaintiff, left in an incapacitated state after applying the baby oil to his skin, found himself mentally and physically unable to resist or express his discomfort, leading to his unwilling compliance with Combs' demands. Once the intoxicating effects of the substances had subsided, Plaintiff felt a deep sense of humiliation and shame for being coerced into such acts.

### Combs Recruited Plaintiff to Work for Him Directly by Promising to Launch Plaintiff's Music Career

23.     On or around the third time that Combs booked Plaintiff through an agency, Combs asked Plaintiff to stop working with his agencies and to work directly for Combs instead.

24.     Plaintiff responded that he was experiencing financial difficulties and could not afford to stop working for the agencies. Plaintiff explained that he earned his livelihood by working for his agencies as an adult entertainer, but that he hoped to become a musical artist.

25.     Upon learning that Plaintiff was an aspiring musician, Combs offered to listen to Plaintiff's music and expressed a willingness to help him advance his music career. Combs made statements such as "I can make you a millionaire overnight" and "I can change your life in a second." Combs specified that he would give Plaintiff a million dollars for each song Plaintiff wrote for him.

26.     Plaintiff was excited for what felt like a tremendous opportunity. Having a direct connection to one of the most prominent and powerful figures in the music industry, who was

known to have made ordinary people into stars, felt like an incredible stroke of luck and a once-in-a-lifetime opportunity for Plaintiff to achieve his dreams.

27.    Plaintiff hoped to impress Combs and earn the chance to become successful in the music industry. Combs asked Plaintiff for his phone number so that Combs could contact him directly. Plaintiff gave Combs his phone number.

**Combs Fraudulently Used Plaintiff's Musical Aspirations Along With Intimidation and Covert Drugging to Obtain Plaintiff's Compliance With Combs' Sexual Demands**

28.    After Plaintiff provided Combs with his contact information, Combs invited him to meet on numerous occasions, offering to listen to his music. Believing that Combs would review his work, Plaintiff accepted these invitations and traveled to meet Combs in locations including Las Vegas, New York City, Los Angeles, and Miami.

29.    Maintaining the appearance of professional interest, Combs purchased airline tickets and hotel accommodations for Plaintiff through his record company, Bad Boy Records.

30.    After Combs began to arrange their meetings directly rather than through Plaintiff's agencies, Combs' behavior shifted in the absence of an agency overseeing the transaction.

31.    When Plaintiff arrived to Combs' locations, which ranged from hotel rooms in various cities to Combs' properties in various states, Combs regularly conducted a full-body pat-down and confiscated Plaintiff's phone when he arrived. Combs regularly had a firearm present either on his person or visible in the room. Plaintiff, aware that Combs had been involved in shootings and violent altercations in the past, felt deeply fearful of doing anything that could upset or anger Combs.

32.    Combs reinforced his fraudulent display of professional interest by setting up mobile studios and frequently playing his upcoming music releases for hours on end, showcasing his prominence in the music industry to Plaintiff.

33.     At nearly every gathering, Combs issued grandiose promises of career assistance to Plaintiff, boasting of his ability to make people millionaires and change lives overnight. Combs even suggested that Plaintiff could become his manager and help him run Bad Boy Entertainment.

34.     At Combs' request, Plaintiff brought recordings of his music for Combs to listen to. However, each time, Combs quickly shifted the conversation away from Plaintiff's music and directed Plaintiff to perform a strip show.

35.     During the strip shows, there was usually a woman present with Combs. On some occasions, other men and/or women were also present. Combs typically required Plaintiff to get undressed and leave his clothes in another room. Combs then barricaded the participants inside the room where the strip show would take place by placing furniture and other objects in front of the door.

36.     Being physically confined in the room without his phone, clothes, or other belongings, along with Combs' firearm serving as a visual reminder that he was armed, made Plaintiff feel trapped, fearful, and as though he were not free to leave.

37.     Combs offered Plaintiff beverages, which Plaintiff sometimes consumed. Combs routinely asked Plaintiff to apply baby oil to Plaintiff's skin during the strip show. Following the application of the baby oil, Plaintiff became drowsy, lethargic, weak, and numb, although Plaintiff did not connect these effects with the baby oil until years later.

38.     Combs frequently pushed Plaintiff to apply more baby oil, saying things like "you're getting a little dull – rub some more baby oil on yourself." If Plaintiff refused to apply the baby oil, Combs became irate. On multiple occasions, Combs squirted large amounts of baby oil onto Plaintiff's skin, coating his skin so heavily that it dripped off of his body.

39.     Each time that Plaintiff applied the baby oil, he was overcome with the same drowsy, extremely tired sensation. Plaintiff felt his eyes become heavy, and when he looked in the mirror his eyes appeared droopy. The overwhelming drowsiness caused him to fall asleep for

unknown periods of time. Often, he lay down on the couch, alternating between sleeping and waking.

40.     After applying the baby oil, Plaintiff became uncoordinated and confused. Plaintiff stumbled over furniture and objects and got lost when trying to find his way to and from the bathroom, and even once fell asleep in the bathroom. On one occasion, Combs asked Plaintiff to record sexual activity with a camera, but Plaintiff was unable to hold the camera straight without swaying his arm.

41.     When Plaintiff was in this drowsy and confused state, Combs directed Plaintiff to masturbate and to engage in sexual contact with the woman present, which included touching the woman's breasts and engaging in sexual intercourse with her. On some of these occasions, Combs placed his hand on Plaintiff's penis and stroked Plaintiff's penis.

42.     Plaintiff tried to communicate at the outset of the meetings that his performances were limited to stripping and dancing and that he was not willing to engage in sexual activity. Yet if Plaintiff refused the beverages that Combs offered, or hesitated to apply baby oil to his skin, Combs became enraged, screaming at Plaintiff, throwing objects, and clenching his fists as if about to strike Plaintiff.

43.     On several occasions, Plaintiff found his penis involuntarily erect even though he was not sexually aroused. On these occasions, Plaintiff noticed that his heart was beating quickly and he felt faint. Plaintiff commented on what he was feeling, and Combs stated that he had put Viagra in Plaintiff's drink to make Plaintiff able to sexually perform. Combs produced a bag of light blue pills and showed them to Plaintiff.

44.     Combs also forced Plaintiff to consume unknown substances. When Plaintiff was sitting or lying down and experiencing the aforementioned effects after applying the baby oil, Combs frequently placed a pill in Plaintiff's mouth and watched him to ensure he had swallowed

it. Combs asked Plaintiff to open his mouth and lift his tongue to ensure he had not hidden the pill.

45.    After ingesting the pills, the physical and physiological effects that Plaintiff was experiencing intensified such that Plaintiff could not fully control his body. Particularly, Plaintiff's sense of tiredness, confusion, and lack of coordination was compounded with a heightened sense of mellowness, calm, numbness, and indifference.

46.    During most encounters, Combs demanded that Plaintiff engage in sexual activity with the woman who was present. This included touching her breasts, vagina, and buttocks, and engaging in vaginal intercourse. Combs often positioned his face directly between Plaintiff's and the woman's genitals to closely monitor and ensure they were engaging in penetration.

47.    Often, Combs demanded that Plaintiff ejaculate on the woman's body or in her mouth, causing Plaintiff to feel deeply humiliated and degraded. On one of those occasions, Plaintiff observed that Combs rubbed Plaintiff's semen on the woman's body and then licked Plaintiff's semen with his tongue.

48.    Occasionally, Plaintiff and/or the woman expressed hesitation or appeared visibly uncomfortable with Combs' demands. At any sign of hesitation or defiance, Combs became enraged. Combs screamed and cursed, threw objects at Plaintiff, toppled furniture, and swung his fists at Plaintiff as though to hit Plaintiff.

49.    On several occasions when Plaintiff did not comply with Combs' demands immediately, Combs forcibly grabbed Plaintiff by the shaft of his penis, causing him physical pain, and forced Plaintiff's penis into the woman's vagina. On some occasions, Combs touched and stroked Plaintiff's penis.

50.    Plaintiff's encounters with Combs lasted for extended periods of time, sometimes more than eighteen hours at a time. Despite Plaintiff informing Combs that he charged a set hourly rate for his stripping engagements, Combs consistently underpaid Plaintiff. Each time Combs

invited Plaintiff to meet under the guise of listening to his music, he instead required Plaintiff to strip and engage in sexual acts, subsequently paying Plaintiff a sum of money that was substantially less than Plaintiff's rate. Plaintiff often attempted to set time limits on the meetings and discuss payment, but Combs disregarded these conversations and made comments such as "aren't we friends now?"

51.    On more than one occasion after awakening, Plaintiff discovered that semen was seeping out of his anus. Plaintiff believed that Combs had raped him, as Combs was the only other male present on those occasions. On these occasions, Combs paid Plaintiff a substantially larger sum of money.

52.    Prior to each occasion that Plaintiff met Combs, Plaintiff believed that he would be able to resist any sexual advances or requests that would arise.  But each time, after applying baby oil to his body, Plaintiff found himself unable to summon the mental acuity or physical strength to resist Combs' demands.

53.    It was not until years later that Plaintiff made the connection that Combs used baby oil to mentally and physically impair him with the intention that Plaintiff submit to Combs' sexual demands.

**Combs Recorded Plaintiff Engaging in Sexual Acts and Threatened Plaintiff as a Means to Exercise Control of Plaintiff**

54.    On one occasion soon after Combs began arranging their meetings directly, Plaintiff discovered a hidden camera in the room and became visibly agitated and distressed at the prospect of being recorded.

55.    Combs confirmed that he had previously recorded Plaintiff engaging in sexual activity, that he maintained the videotapes, and that he would release the videos and ruin Plaintiff's reputation if Plaintiff did not comply with his demands. Combs made statements such

as "I can change your life in a second and make you a millionaire overnight…but I have means and ways of taking care of things."

56.     Plaintiff understood Combs' threats to mean that if Plaintiff angered or defied Combs, Combs would not only withdraw his promised support of Plaintiff's music career, but he would blackmail Plaintiff with the sexually graphic videotapes.

57.     Over the next several years, Combs and members of his team regularly reached out to Plaintiff to set meetings. Sometimes days or weeks elapsed between meetings, while sometimes weeks or months would pass. Often, Combs' requests to meet Plaintiff coincided with Combs' appearance at major events such as performances, presentations, and awards shows.

58.     If Plaintiff ever declined to meet Combs, Combs then reached out to Plaintiff directly threatening him, making statements such as "I can make you disappear" and "things aren't going to get better for you" and threatening to release the videotapes of Plaintiff. Deeply afraid and believing that Combs would follow through on his threats, Plaintiff submitted to Combs' demands.

59.     In addition to hiring Plaintiff to perform for him, Combs also insisted that Plaintiff send Combs sexually explicit photos of Plaintiff's penis. Afraid of the potential consequences of refusing, Plaintiff complied.

60.     In or around 2010, after years of Combs instilling fear in Plaintiff, misleading Plaintiff and manipulating him with promises that never materialized, it finally became clear to Plaintiff that Combs had no intention of supporting Plaintiff's career. At this point, Plaintiff realized he needed to find a way to escape Combs' manipulation and abuse.

61.     During the next two years, Plaintiff made repeated attempts to distance himself from Combs. Each time they spoke on the phone, Plaintiff experienced intense anxiety, with his heart racing, yet Combs refused to accept "no" for an answer. Combs used threats to exert control, warning Plaintiff, "You're not loyal." "Who are you going to tell about all of this?" "Don't forget,

I have tapes of you." Plaintiff found himself trapped in an abusive cycle from which he felt he could not escape.

62.     Plaintiff's last encounter with Combs was in or around November 2012, close to the time that Plaintiff got married. Plaintiff hoped that his marriage could serve as a boundary that Combs would respect. Yet, Combs continued to call persistently for months, pressuring Plaintiff to return.

63.     Since his last encounter with Combs, Plaintiff has experienced a strong and unrelenting desire to come forward about Combs' abuse, but was deterred by his fears that Combs would follow through with his threats to release the compromising videos of Plaintiff and irreparably harm Plaintiff's reputation. Worse, Plaintiff feared that Combs or his agents or companies' representatives would take steps to seriously harm Plaintiff and his family, as Combs had repeatedly emphasized he was capable and willing to do.

64.     On November 16, 2023, Casandra Ventura filed a civil lawsuit against Combs. As more and more individuals filed civil lawsuits against Combs, Plaintiff gathered the courage to begin searching for legal representation, but he continued to fear the consequences of bringing his own lawsuit against Combs.

65.     On October 3, 2024, an individual representing Combs reached out to Plaintiff to insist on an in-person meeting, further intensifying Plaintiff's fear for his safety.

66.     But Combs' recent arrest and the subsequent denials of his bail applications provided Plaintiff with a small measure of comfort and protection, conferring on him newfound confidence that Combs would remain incarcerated and thus be less likely to release the videotapes or otherwise harm him.

## DAMAGES

67.     During the times Plaintiff interacted with Combs, he experienced recurring and severe health issues, particularly bouts of pneumonia that often arose shortly after these

encounters. Plaintiff frequently coughed up blood following these incidents, and on one occasion, a near-fatal bout of pneumonia required emergency hospitalization due to excessive bleeding into Plaintiff's lungs which led to respiratory failure.

68.     Plaintiff believes that these health issues were a result of being continuously drugged by Combs. Since ending contact with Combs, Plaintiff has had no further episodes of pneumonia or coughing up blood.

69.     Since his traumatic experiences with Combs, Plaintiff has been in a constant state of survival mode, tormented by the fear that Combs will follow through on his threats to harm him or release compromising videos. This dread, coupled with severe emotional and psychological trauma, has left Plaintiff plagued by paranoia and haunted by painful memories he had tried to suppress, which bring overwhelming feelings of shame and embarrassment.

70.     This ordeal has derailed Plaintiff's musical career prospects, extinguishing his passion for music—something he once loved but has not returned to since.

71.     Plaintiff has sought counseling to address chronic depression and substance abuse issues. His home is now equipped with security cameras, and he remains armed, with his security system active at all times. These lasting precautions underscore the profound and enduring impact of Combs' abusive, threatening actions, forcing Plaintiff to live each day in a state of vigilance and fear.

72.     As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer, emotional pain, suffering, inconvenience, loss of enjoyment of life, depression, anxiety disorder, paranoia, and other non-pecuniary losses entitling him to an award of compensatory and punitive damages, injunctive and declaratory relief, attorney's fees and costs, and other remedies as this Court may deem appropriate.

**FIRST CAUSE OF ACTION**
**Violation of the Victims of Gender-Motivated Violence Act, N.Y.C. Admin.**
**Code §§ 10-1101, *et seq.* ("VGMVPL")**
***Against All Defendants***

73.     Plaintiff repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

74.     The above-described conduct of Combs occurring in New York City, including but not limited to Combs' physical and sexual assaults of Plaintiff constitutes a "crime of violence" against Plaintiff under Section 10-1103 of the New York City Victims of Gender-Motivated Violence Act ("VGMVPL"). Combs' conduct, including the touching of Plaintiff's penis during the physical and sexual assaults, is a "crime of violence motivated by gender" under Section 10-1103 of the VGMVPL. The term "crime of violence" means an act or series of acts that would constitute a misdemeanor or felony against the person as defined in state or federal law if the conduct presents a serious risk of physical injury to another, whether or not those acts have actually resulted in criminal charges, prosecution or conviction. The term "crime of violence motivated by gender" means a crime of violence committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender.

75.     The above-described conduct of Combs, including, but not limited to, sexual assault, physical assault, threats, and false imprisonment, all conduct proscribed by New York Penal Law ("PL") 110/120.00(1), PL 120.15, PL 120.14(2), PL 130.35(3), PL 130.52, PL 130.65, PL 130.90, PL 135.05, PL 135.10, constitutes a "crime of violence" against Plaintiff as defined in Section 10-1103 of the VGMVPL and is a "crime of violence motivated by gender" as defined in Section 10-1103 of the VGMVPL.

76.     By facilitating its owner's behavior, the Bad Boy Defendants have financially and otherwise benefited from these acts and omissions by keeping Combs satisfied.

77.    The Bad Boy Defendants enabled, condoned, had knowledge of, and failed to act to prevent or mitigate Combs' commission of the abovementioned crimes of violence motivated by gender and are therefore also liable under the VGMVPL.

78.    As a direct and proximate result of the above mentioned crimes of violence and gender-motivated violence, Plaintiff has sustained and will continue to sustain, monetary damages and/or economic harm, physical injury, pain and suffering, and serious psychological and emotional distress, entitling him to an award of compensatory and punitive damages, injunctive and declaratory relief, attorneys' fees and costs, and other remedies as this Court may deem appropriate, as set forth in Section 10-1104 of the VGMVPL.

79.    Pursuant to Section 10-1105(a) of the VGMVPL, this cause of action is timely because it is commenced within "two years and six months after September 1, 2022."

### SECOND CAUSE OF ACTION
### Forced Labor in Violation of 18 U.S.C. §§ 1589 and 1595
### *Against All Defendants*

80.    Plaintiff repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

81.    Defendants knowingly obtained labor from Plaintiff through threats of serious harm, physical restraint, and other means of coercion, in violation of 18 U.S.C. § 1589.

82.    Defendants knowingly benefited from the forced labor and the trafficking activities conducted by Combs.

83.    Under 18 U.S.C. § 1595, Plaintiff is entitled to bring a civil action against Defendants Combs and Bad Boy Records for their violation of 18 U.S.C. § 1589.

84.    As a direct and proximate result of Defendants' actions, Plaintiff has sustained and will continue to sustain, monetary damages and/or economic harm, physical injury, pain and suffering, and serious psychological and emotional distress.

85.    Plaintiff seeks compensatory damages for the harm suffered as a result of Defendants' forced labor practices.

86.    Plaintiff also seeks punitive damages to deter such conduct by Defendants in the future, along with reasonable attorney's fees and costs.

87.    The Bad Boy Defendants knew of Combs' continuous death threats and coercion against Plaintiff. Combs' continuous death threats and coercion, and the Bad Boy Defendants' ratification of said death threats and coercion, prevented Plaintiff from asserting his rights within the statutorily proscribed period. Defendants should be estopped from asserting the statute of limitations as a defense due to the duress exerted upon Plaintiff.

### THIRD CAUSE OF ACTION
### Violation of New York Services for Victims of Human Trafficking, N.Y. Servs. Law § 483-bb(c)
### *Against All Defendants*

88.    Plaintiff repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

89.    Plaintiff is a victim of labor trafficking within the meaning of N.Y. Penal Law 135.35 and is therefore entitled to bring a civil action under N.Y. Soc. Serv. § 483-bb.

90.    Defendants' acts and omissions, taken separately and/or together, as outlined above, constitute a violation of N.Y. Soc. Serv. § 483-bb(c). Specifically, Defendants perpetrated labor trafficking of Plaintiff by inducing him to engage or continue to engage in labor activity by means of instilling a fear in him that, if he refused to comply, Combs would cause physical injury, serious physical injury, or death; engage in other conduct constituting a felony or unlawful imprisonment in the second degree; and/or expose a secret or publicize an asserted fact tending to subject Plaintiff to hatred, contempt, or ridicule, in violation of New York Penal Law 135.35. At all relevant times, the Bad Boy Defendants participated in and facilitated the obtainment of Plaintiff's labor induced by force, fraud, or coercion.

91.     As a direct and proximate result of Defendants' actions, Plaintiff has sustained and will continue to sustain, monetary damages and/or economic harm, physical injury, pain and suffering, and serious psychological and emotional distress.

92.     The Bad Boy Defendants knew of Combs' continuous death threats and coercion against Plaintiff. Combs' continuous death threats and coercion, and the Bad Boy Defendants' ratification of said death threats and coercion, prevented Plaintiff from asserting his rights within the statutorily proscribed period. Under N.Y. Soc. Serv. § 483-bb (c) (iii), the running of the statute of limitations for this cause of action is tolled; Defendants should be estopped from asserting the statute of limitations as a defense due to the duress exerted upon Plaintiff.

### FOURTH CAUSE OF ACTION
### Sex Trafficking under 18 U.S.C. § 1591, *et seq.*
### *Against All Defendants*

93.     Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

94.     Combs, one of the most prominent musical artists and producers in the industry, recruited and enticed Plaintiff by initiating a professional relationship and fraudulently promising to help advance Plaintiff's music career, even inviting him to work for the Bad Boy Defendants. These false promises and opportunities gave Plaintiff hope and a genuine expectation of career advancement and success in the music industry.

95.     Combs, through a pattern of coercive threats and displays of aggression and intimidation, caused Plaintiff to engage in commercial sex acts, as defined by 18 U.S.C. § 1591(e)(3). These acts were carried out to satisfy Combs' own sexual gratification and to exert control over Plaintiff.

96.     Combs used fraud and force to coerce and entice Plaintiff into commercial sex acts. Combs did so by making threats and false promises of career advancement in exchange for Plaintiff's acquiescence to Combs' sexual batteries and assaults.

97.    Combs acted with knowledge or in reckless disregard of the fact that Plaintiff was forced to engage in these acts through coercion, relying on Combs' representations and assurances that doing so would advance his music career.

98.    The Bad Boy Defendants have financially and otherwise benefited from these acts and omissions by keeping Combs, the volatile and explosive owner of the Bad Boy Defendants, satisfied, and the Bad Boy Defendants benefited from facilitating his behavior.

99.    As a direct and proximate result of Defendants' actions, Plaintiff has sustained and will continue to sustain, monetary damages and/or economic harm, physical injury, pain and suffering, and serious psychological and emotional distress.

100.    The Bad Boy Defendants knew of Combs' continuous death threats and coercion against Plaintiff. Combs' continuous death threats and coercion, and the Bad Boy Defendants' ratification of said death threats and coercion, prevented Plaintiff from asserting his rights within the statutorily proscribed period. Defendants should be estopped from asserting the statute of limitations as a defense due to the duress exerted upon Plaintiff.

### FIFTH CAUSE OF ACTION
### Violation of the California Trafficking Victims Protection Act,
### Cal. Civil Code § 52.5
### *Against Defendants Sean Combs & Bad Boy Records*

101.    Plaintiff repeats and realleges each and every allegation contained in all of the preceding paragraphs as if fully set forth herein.

102.    Plaintiff is a victim of trafficking within the meaning of Cal. Penal Code § 236.1 and is therefore entitled to bring a civil action under Cal. Civil Code § 52.5.

103.    The Defendants' acts and omissions, taken separately and/or together, as outlined above, constitute a violation of Cal. Civ. Code § 52.5. Specifically, Defendant Sean Combs perpetrated human trafficking of Plaintiff by depriving or violating his personal liberty with the intent to obtain forced labor, and Defendant Bad Boy Records benefitted from Combs' venture

by holding Plaintiff captive to Combs' demands and desires. At all relevant times, Defendants participated in and facilitated the obtainment of Plaintiff's labor induced by force, fraud, or coercion.

104.    Defendant Bad Boy Records has benefited from these acts and omissions by keeping Combs, the volatile and explosive owner of Bad Boy Records, satisfied, and benefited from facilitating his behavior.

105.    As a direct and proximate result of Defendants' actions, Plaintiff has sustained and will continue to sustain, monetary damages and/or economic harm, physical injury, pain and suffering, and serious psychological and emotional distress.

106.    Pursuant to Cal. Civ. Code § 52.5(d)(3), Defendants' continuous death threats and coercion induced Plaintiff to delay the filing of this action and asserting his rights within the statutorily proscribed period. Defendant should be estopped from asserting the statute of limitations as a defense due to the duress exerted upon Plaintiff.

107.    Pursuant to Cal. Civ. Code § 52.5(d)(4), the suspension of the statute of limitations due to estoppel applies to all other related claims arising out of the trafficking situation, including but not limited to, Violation of The Victims of Gender-Motivated Violence Act, N.Y.C. Admin. Code §§ 10-1101, *et seq*., Forced Labor in Violation of 18 U.S.C. §§ 1589 and 1595, New York Services for Victims of Human Trafficking, N.Y. Servs. Law § 483-bb(c), Sex Trafficking under 18 U.S.C. § 1591, Sexual Battery under California Civil Code § 1708.5, Assault Under New York Law, Battery/Sexual Battery Under New York Law, False Imprisonment under New York Law, False Imprisonment under California Law, Intentional Infliction of Emotional Distress, Invasion of Privacy under California Law, Intrusion upon Seclusion under New York Law, Breach of Contract under California and New York Law, Unjust Enrichment/Quantum Meruit under California and New York Law.

108.     Pursuant to Cal. Civ. Code § 52.5(e), the running of the statute of limitations may be suspended as Plaintiff could not have reasonably discovered the cause of action due to circumstances resulting from the trafficking, including psychological trauma.

109.     The Bad Boy Defendants knew of Combs' continuous death threats and coercion against Plaintiff. Combs' continuous death threats and coercion, and the Bad Boy Defendants' ratification of said death threats and coercion, prevented Plaintiff from asserting his rights within the statutorily proscribed period. Defendants should be estopped from asserting the statute of limitations as a defense due to the duress exerted upon Plaintiff.

### SIXTH CAUSE OF ACTION
### Sexual Battery under California Law
### *Against Defendant Sean Combs*

110.     Plaintiff repeats and realleges each and every allegation contained in all of the preceding paragraphs as if fully set forth herein.

111.     Combs engaged in non-consensual sexual acts with Plaintiff, including forcibly grabbing Plaintiff's penis and raping Plaintiff by engaging in non-consensual anal penetration. Combs' actions amount to a violation of California Civil Code § 1708.5, which establishes liability for sexual battery when a defendant intentionally causes a harmful or offensive contact with an intimate part of another without consent.

112.      As a direct and proximate result of Combs' actions, Plaintiff has sustained and will continue to sustain, monetary damages and/or economic harm, physical injury, pain and suffering, and serious psychological and emotional distress.

113.     The above-described conduct by Combs was willful, wanton, and malicious. At all relevant times, Combs acted with conscious disregard of Plaintiff's rights and feelings, acted with the knowledge of or with reckless disregard for the fact that his conduct was certain to cause injury and/or humiliation to Plaintiff, and intended to cause fear, physical injury, and/or pain and

suffering to Plaintiff. By virtue of the foregoing, Plaintiff is entitled to recover punitive and exemplary damages from Combs according to proof at trial.

114.    Moreover, Combs' continuous death threats and coercion prevented Plaintiff from asserting his rights within the statutorily proscribed period. Combs should be estopped from asserting the statute of limitations as a defense due to the duress exerted upon Plaintiff.

**SEVENTH CAUSE OF ACTION**
**Assault Under New York Law**
***Against Defendant Sean Combs***

115.    Plaintiff repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

116.    In engaging in the conduct described above, Combs committed an assault against Plaintiff because he intentionally placed Plaintiff in reasonable apprehension of imminent harmful or offensive contact, and Plaintiff reasonably feared immediate bodily harm as a result of Combs' conduct. Combs' actions amount to violations under N.Y. Penal Law §§ 110/120.00(1) and 120.15.

117.    As a direct and proximate result of Combs actions, Plaintiff has sustained and will continue to sustain, monetary damages and/or economic harm, physical injury, pain and suffering, and serious psychological and emotional distress.

118.    The conduct of Combs described above was willful, wanton, and malicious. At all relevant times, Combs acted with conscious disregard of Plaintiff's rights and feelings, acted with the knowledge of or with reckless disregard for the fact that his conduct was certain to cause injury and/or humiliation to Plaintiff, and intended to cause fear, physical injury, and/or pain and suffering to Plaintiff. By virtue of the foregoing, Plaintiff is entitled to recover punitive and exemplary damages from Combs according to proof at trial.

119.    Combs' continuous death threats and coercion prevented Plaintiff from asserting his rights within the statutorily proscribed period. Combs should be estopped from asserting the statute of limitations as a defense due to the duress exerted upon Plaintiff.

**EIGHTH CAUSE OFACTION**
**Battery/Sexual Battery Under New York Law**
**_Against Defendant Sean Combs_**

120.    Plaintiff repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

121.    In engaging in the conduct described above, Combs committed a battery against Plaintiff because he intentionally engaged in unlawful, intentional, and offensive touching or application of force to Plaintiff's person. Combs repeatedly and without consent touched Plaintiff's body including his penis and buttocks. Combs' actions amount to violations under New York  Penal Law §§ 130.52, 130.55, 130.65, 130.35, and 130.90.

122.    As a direct and proximate result of Combs' actions, Plaintiff has sustained and will continue to sustain, monetary damages and/or economic harm, physical injury, pain and suffering, and serious psychological and emotional distress.

123.    The above-described conduct by Combs was willful, wanton, and malicious. At all relevant times, Combs acted with conscious disregard of Plaintiff's rights and feelings, acted with the knowledge of or with reckless disregard for the fact that his conduct was certain to cause injury and/or humiliation to Plaintiff, and intended to cause fear, physical injury, and/or pain and suffering to Plaintiff. By virtue of the foregoing, Plaintiff is entitled to recover punitive and exemplary damages from Combs according to proof at trial.

124.    Combs' continuous death threats and coercion prevented Plaintiff from asserting his rights within the statutorily proscribed period. Combs should be estopped from asserting the statute of limitations as a defense due to the duress exerted upon Plaintiff.

**NINTH CAUSE OF ACTION**
**Sexual Battery Under Nevada Law**
***Against Defendant Sean Combs***

125.    Plaintiff repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

126.    The above-described conduct of Combs, including but not limited to Combs' repeatedly touching Plaintiff's penis without Plaintiff's consent, occurred in Las Vegas, Nevada, among other locations.

127.    Combs' actions constitute sexual battery under the laws of Nevada, as they involved intentional and unlawful physical contact of a sexual nature without Plaintiff's consent.

128.    The claim for sexual battery based on Combs' actions in Nevada is timely under Nevada Senate Bill 129 (SB129), which, effective May 31, 2023, removed the statute of limitations for civil actions arising from sexual assault or sexual battery. SB129 applies retroactively to any claims that were previously time-barred by the statute of limitations.

129.    As a direct and proximate result of the above-mentioned sexual batteries, Plaintiff has sustained and will continue to sustain, monetary damages and/or economic harm, physical injury, pain and suffering, and serious psychological and emotional distress, entitling him to an award of compensatory and punitive damages, injunctive and declaratory relief, attorneys' fees and costs, and other remedies as this Court may deem appropriate.

**TENTH CAUSE OF ACTION**
**False Imprisonment under New York Law**
***Against Defendant Sean Combs***

130.    Plaintiff repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

131.    Combs falsely imprisoned Plaintiff in New York as alleged in this Complaint, by suddenly and without provocation, willfully and maliciously falsely imprisoning Plaintiff against his will in Combs' hotel rooms for hours at a time.

132.    Following the false imprisonment by Combs, he issued a clear retaliatory threat of future injury and bodily harm to Plaintiff, underscoring the intent to both control and to silence Plaintiff as to Combs' crimes.

133.    As a direct and proximate result of Combs' actions, Plaintiff has sustained and will continue to sustain, monetary damages and/or economic harm, physical injury, pain and suffering, and serious psychological and emotional distress.

134.    Combs' continuous death threats and coercion prevented Plaintiff from asserting his rights. Combs should be estopped from asserting the statute of limitations as a defense due to the duress exerted upon Plaintiff.

## ELEVENTH CAUSE OF ACTION
### False Imprisonment under California Law
### *Against Defendant Sean Combs*

135.    Plaintiff repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

136.    Combs falsely imprisoned Plaintiff in California as alleged in this Complaint, by demanding, under false pretenses, that Plaintiff appear for hire, and subsequently, willfully and maliciously falsely imprisoning and threatening Plaintiff in Combs' home and hotel rooms against Plaintiff's will for several days at a time.

137.    Following Plaintiff's false imprisonment in Combs' home and hotel rooms, Combs issued a clear retaliatory threat of future injury and bodily harm to Plaintiff, underscoring the intent to both control and to silence Plaintiff as to Combs' crimes.

138.    As a direct and proximate result of Combs' actions, Plaintiff has sustained and will continue to sustain, monetary damages and/or economic harm, physical injury, pain and suffering, and serious psychological and emotional distress.

139.    Combs' continuous death threats and coercion prevented Plaintiff from asserting his rights. Combs should be estopped from asserting the statute of limitations as a defense due to the duress exerted upon Plaintiff.

### TWELFTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress under California and New York Law
### *Against Defendant Sean Combs*

140.    Plaintiff repeats and re-alleges each and every allegation set forth in all of the preceding paragraphs as if fully set forth herein.

141.    Combs' conduct, which included rape, sexual assault, death threats, false imprisonment, covert drugging, covert surveillance, threats to disseminate the sex tapes resulting from the covert surveillance, and nonpayment or underpayments, was extreme and outrageous, going beyond all possible bounds of decency and utterly intolerable in a civilized community.

142.    Combs' conduct was intentional and reckless and Combs knew or should have known that such conduct would cause Plaintiff severe emotional distress.

143.    As a direct and proximate result of Combs' actions, Plaintiff has sustained and will continue to sustain, monetary damages and/or economic harm, physical injury, pain and suffering, and serious psychological and emotional distress.

144.    Combs' continuous death threats and coercion prevented Plaintiff from asserting his rights within the statutorily proscribed period. Combs should be estopped from asserting the statute of limitations as a defense due to the duress exerted upon Plaintiff.

### THIRTEENTH CAUSE OF ACTION
### Invasion of Privacy under California Law
### *Against Defendant Sean Combs*

145.    Plaintiff repeats and re-alleges each and every allegation set forth in all of the preceding paragraphs as if fully set forth herein.

146.    Combs knowingly and intentionally invaded Plaintiff's privacy by using video recording devices to covertly capture Plaintiff engaged in intimate and private sexual activities

within the privacy of Combs' home and hotel rooms. Such conduct by Combs amounts to a violation of California Civil Code section 1708.8(a).

147.    Plaintiff had a reasonable expectation of privacy in the location where the recordings took place, as it was a private setting and no consent was given to Combs to record intimate activities.

148.    Combs' conduct constitutes an invasion of privacy under California Civil Code section 1708.8(a) because it was committed without Plaintiff's knowledge or authorization and involved the use of visual devices designed to capture visual images in a private setting.

149.    Combs' conduct was intentional and reckless and he knew or should have known that such conduct would cause Plaintiff severe emotional distress.

150.    As a direct and proximate result of Combs' actions, Plaintiff has sustained and will continue to sustain, monetary damages and/or economic harm, physical injury, pain and suffering, and serious psychological and emotional distress.

151.    Combs' continuous death threats and coercion prevented Plaintiff from asserting his rights within the statutorily proscribed period. Combs should be estopped from asserting the statute of limitations as a defense due to the duress exerted upon Plaintiff.

### FOURTEENTH CAUSE OF ACTION
### Intrusion upon Seclusion under New York Law
### *Against Defendant Sean Combs*

152.    Plaintiff repeats and re-alleges each and every allegation set forth in all of the preceding paragraphs as if fully set forth herein.

153.    Combs intentionally intruded upon Plaintiff's privacy by secretly video recording Plaintiff engaging in explicit sexual acts in Combs' private residence and in hotel rooms without Plaintiff's knowledge or consent.

154.    Plaintiff had a reasonable expectation of privacy in these settings, as they were locations intended for personal and intimate activities shielded from public view.

155.    Combs' actions were intentional, highly offensive, and constituted a gross violation of Plaintiff's privacy rights. Combs knowingly and surreptitiously recorded these private moments for his own purposes, demonstrating a complete disregard for Plaintiff's right to privacy.

156.    Combs' conduct was intentional and reckless and Combs knew or should have known that such conduct would cause Plaintiff severe emotional distress.

157.    As a direct and proximate result of Combs' actions, Plaintiff has sustained and will continue to sustain, monetary damages and/or economic harm, physical injury, pain and suffering, and serious psychological and emotional distress.

158.    Combs' continuous death threats and coercion prevented Plaintiff from asserting his rights within the statutorily proscribed period. Combs should be estopped from asserting the statute of limitations as a defense due to the duress exerted upon Plaintiff.

**FIFTEENTH CAUSE OF ACTION**
**Breach of Contract under California and New York Law**
***Against Defendant Sean Combs***

159.    Plaintiff repeats and re-alleges each and every allegation set forth in all of the preceding paragraphs as if fully set forth herein.

160.    Plaintiff entered into agreements with Combs in which Plaintiff agreed to provide entertainment services for Combs at a specified hourly rate. In return, Combs agreed to compensate Plaintiff for all hours worked at the agreed-upon rate.

161.    Plaintiff fulfilled his obligations under the agreement by arriving at the designated location and performing the agreed-upon services.

162.    Combs often breached the agreement by refusing to compensate Plaintiff for the full number of hours he worked.

163.    As a direct and proximate result of Combs' actions, Plaintiff has sustained and will continue to sustain monetary damages and/or economic harm, physical injury, pain and suffering, and serious psychological and emotional distress.

164.    Combs' continuous death threats and coercion prevented Plaintiff from asserting his rights within the statutorily proscribed period. Combs should be estopped from asserting the statute of limitations as a defense due to the duress exerted upon Plaintiff.

### SIXTEENTH CAUSE OF ACTION
### Quantum Meruit/Unjust Enrichment under California and New York Law
### *Against Defendant Sean Combs*

165.    Plaintiff repeats and re-alleges each and every allegation set forth in all of the preceding paragraphs as if fully set forth herein.

166.    From approximately 2007 to 2012, on numerous occasions, Plaintiff provided entertainment services to Combs well beyond the originally agreed-upon hours, with the expectation of being compensated for all hours worked.

167.    Combs knowingly accepted the benefit of Plaintiff's extended performance and received value from Combs' services, including but not limited to Plaintiff's time, effort, and skill.

168.    It would be unjust to allow Combs to retain the benefit of Plaintiff's additional services without full payment, as Combs has been unjustly enriched at Plaintiff's expense.

169.    As a direct and proximate result of Combs' actions, Plaintiff has sustained and will continue to sustain, monetary damages and/or economic harm, physical injury, pain and suffering, and serious psychological and emotional distress.

170.    Plaintiff is entitled to recover the reasonable value of the services provided during the entire time worked, in an amount to be determined at trial.

171.    Combs' continuous death threats and coercion prevented Plaintiff from asserting his rights within the statutorily proscribed period. Combs should be estopped from asserting the statute of limitations as a defense due to the duress exerted upon Plaintiff.

## PRAYER FOR RELIEF ON CLAIMS

WHEREFORE, Plaintiff prays that this Court enter judgment against Defendants herein and any other Defendants who may later be added to this action as follows:

1.    For a money judgment representing compensatory damages, including but not limited to:  consequential damages, lost wages, non-economic damages, and all other sums of money, together with interest on these amounts, according to proof;

2.    For a money judgment for mental pain and anguish and severe emotional distress, according to proof;

3.    For restitution;

4.    For disgorgement of all sums unjustly obtained from Plaintiff or inured to the benefit of Defendants;

5.    For civil penalties;

6.    For punitive and exemplary damages according to proof;

7.    For attorneys' fees and costs;

8.    For prejudgment and post-judgement interest; and

9.    For such other and further relief as the Court may deem just and proper.

## VII.   JURY DEMAND

Plaintiff demands a trial by jury on all issues triable of right by jury.

DATED: February 4 , 2025

Respectfully submitted,

**THE BLOOM FIRM**

By: _Lisa Bloom_

Lisa Bloom
Arick Fudali
Yasmine Meyer
Alan Goldstein
Devin Meepos
Attorneys for Plaintiff, JOHN DOE