UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JULIAN SAPP,

Plaintiff,

-against-

SEAN COMBS, DOE CORPORATIONS 1-10, and DOE DEFENDANTS 11-20,

Defendants.

Case No. 1:25-cv-00996 (JLR)

**OPINION AND ORDER**

JENNIFER L. ROCHON, United States District Judge:

Plaintiff Julian Sapp ("Plaintiff" or "Sapp") brings this action against Defendant Sean Combs ("Defendant" or "Combs") and several related business entities, alleging that Combs — a rapper, record producer, and record executive — recruited and enticed Plaintiff with false promises of advancing Plaintiff's music career, only to drug, rape, sexually assault, and traffic him over an approximately five-year period. Dkt. 58 ("Am. Compl." or the "Amended Complaint") ¶¶ 17, 21, 42-56, 61-62, 69.[1] Now before the Court is Combs's motion to dismiss the Amended Complaint in its entirety. Dkt. 60 ("Mot."). For the reasons that follow, the motion is GRANTED.

[1] Plaintiff filed his Amended Complaint in response to motions to dismiss from then-Defendants Bad Boy Records LLC, Bad Boy Entertainment LLC, Bad Boy Entertainment Holdings, Inc., Bad Boy Productions Holdings, Inc., and Bad Boy Books Holdings, Inc., as well as Combs. Dkt. 56; *see* Dkts. 37, 42; *see also* Dkt. 50 (so-ordering Sapp's voluntary dismissal of corporate defendants). At the time, the Court had not yet ruled on Plaintiff's request to proceed anonymously. Dkt. 15. Following the Court's denial of that request, *see* Dkt. 57, Plaintiff refiled a deanonymized version of his Amended Complaint at Dkt. 58, which is the operative complaint.

## BACKGROUND

### I. Factual Background

The following facts are drawn from the Amended Complaint and taken as true for purposes of this motion. *See Costin v. Glens Falls Hosp.*, 103 F.4th 946, 952 (2d Cir. 2024).

Sapp is a Las Vegas-based entertainer who, during the relevant period, also aspired to a career in the music industry. Am. Compl. ¶¶ 2, 8. In approximately 2007, Sapp worked as an adult entertainer, arranging his performances through several agencies. *Id.* ¶ 8. Those agencies booked clients under pseudonyms, so Sapp did not know their identities until meeting them in person. *Id.* ¶ 9.

Sapp first met Combs in 2007, when one of Sapp's agencies booked him to perform for Combs at a Las Vegas hotel. *Id.* ¶ 11. Combs booked Sapp through his agencies on at least two subsequent occasions. *Id.* ¶ 14. According to Sapp, those engagements were limited to dancing and stripping, and Sapp and his agencies communicated those limitations in advance. *See id.* ¶¶ 10, 13, 15. Notwithstanding those articulated boundaries, Sapp alleges that Combs gave him beverages and marijuana and asked him to apply baby oil to himself, after which Sapp became unusually drowsy, disoriented, and physically impaired. *Id.* ¶ 16. Combs then allegedly directed Sapp to engage in nonconsensual sexual conduct, while Sapp was too impaired to resist. *Id.* ¶ 17.

Around the third agency-arranged engagement, Combs asked Sapp to stop working through his agencies and instead work directly with Combs and his companies. *Id.* ¶ 19. Sapp responded that he relied on the agency work to support himself but ultimately hoped to pursue music; Combs then offered to listen to Sapp's music and help advance his career. *Id.* ¶¶ 20-21. Given Combs's position in the music industry, Sapp regarded that offer as a potentially significant professional opportunity. *Id.* ¶¶ 22-24.

Combs subsequently invited Sapp to meetings in Las Vegas, New York, Los Angeles, and Miami, ostensibly to discuss Sapp's music. *Id.* ¶ 25. The Amended Complaint alleges that Combs repeatedly made representations concerning possible recording, production, and media opportunities. *Id.* ¶¶ 30-31. But Sapp's meetings with Combs frequently shifted from discussions of music to stripping and sexual activity. *Id.* ¶ 32. During these interactions, while allegedly displaying a firearm, Combs would pat Sapp down, require him to remove his clothing and place it in another room, confiscate his phone, and block exits with furniture and other objects. *Id.* ¶¶ 29, 33-34. Those circumstances made Sapp believe that he was not free to leave. *Id.* ¶ 34.

Sapp also claims that Combs repeatedly provided him with substances that caused substantial impairment and, on some occasions, forced him to ingest pills. *Id.* ¶¶ 35-38, 41-43. While Sapp was impaired, Combs allegedly compelled him to engage in sexual acts with Combs or third parties, sometimes using physical force when Sapp resisted. *Id.* ¶¶ 39-40, 44, 46-49. Sapp further alleges that, on more than one occasion, he awoke after a period of impairment with physical indications that led him to believe Combs had sexually assaulted him while he was unconscious. *Id.* ¶ 53. Although Sapp continued to charge Combs for the entertainment services he had agreed to provide, he alleges that Combs regularly paid less than the agreed amount and disregarded Sapp's efforts to set time limits or discuss compensation. *Id.* ¶¶ 51-52.

Combs also allegedly used recordings to pressure Sapp to comply with his demands. Early in their direct dealings, Sapp discovered a hidden camera and learned that Combs had secretly recorded him engaging in sexual activity. *Id.* ¶¶ 58-59. According to Sapp, Combs told him that other recordings existed and threatened to release them if Sapp disclosed Combs's conduct or refused to comply. *Id.* ¶ 59. Throughout this period, Combs also repeatedly instructed Sapp not to discuss what occurred between them and made statements that Sapp

understood as threats of serious physical harm to him and his family, including that Combs "make[s] people disappear." *Id.* ¶¶ 60-61. When Sapp declined requests to meet, Combs sometimes responded with additional threats and reminders that he possessed explicit recordings of Sapp. *Id.* ¶¶ 65, 68. Sapp asserts that he regarded those threats as credible because he had witnessed Combs engage in violent conduct toward other individuals and sometimes had firearms present during their encounters. *Id.* ¶¶ 29, 62-63.

By 2010, Sapp concluded that Combs did not intend to advance his music career and sought to distance himself from Combs over the ensuing two years. *Id.* ¶¶ 67-68. He continued to speak with Combs over the phone during that time, and Combs allegedly used those calls to question Sapp's loyalty and threaten him by invoking the recordings. *Id.* ¶ 68. Despite those threats, Sapp ceased all in-person interactions with Combs by November 2012. *Id.* ¶ 69. Combs allegedly continued calling Sapp "for months" thereafter to pressure him to return. *Id.* But Sapp does not allege any further direct contact with Combs after those calls ceased.

Sapp asserts that his fear nevertheless persisted. He believed that Combs might release the sexually explicit recordings or harm him or his family if he disclosed the alleged abuse or pursued legal action. *Id.* ¶¶ 63, 70. He maintains that this fear substantially affected his conduct during the ensuing years: he became hypervigilant, avoided receiving mail at his residence, installed surveillance equipment, and limited his social interactions. *Id.* ¶¶ 76, 79-80. Sapp also suffered significant psychological and emotional harm and sought counseling and substance-abuse treatment. *Id.* ¶¶ 76-77.

Around November 2023, at the time lawsuits were being filed by other individuals against Combs, Sapp began seeking legal representation. *Id.* ¶ 71. But he allegedly remained too fearful to file his own action at that time. *Id.* According to Sapp, Combs's September 2024 arrest and subsequent detention without bail gave him a measure of security, as he believed that

Combs's incarceration reduced Combs's ability to harm him or disseminate the recordings. *Id.* ¶ 73. On October 3, 2024, however, "an individual representing Combs" contacted Sapp and "insist[ed] on an in-person meeting," which Sapp claims renewed his fear of Combs. *Id.* ¶ 72. The Amended Complaint does not identify that individual, describe the substance or purpose of the proposed meeting, or allege that the individual communicated a threat on Combs's behalf.

## II. Procedural History

Sapp commenced this action approximately four months later, on February 4, 2025. *See* Dkt. 1 ("Compl." or the "Complaint"). He asserts fifteen causes of action: (1) violation of the New York City Victims of Gender-Motivated Violence Protection Law ("VGMVPL"), N.Y.C. Admin. Code § 10-1101 *et seq.*; (2) forced labor under 18 U.S.C. § 1589; (3) sex trafficking under 18 U.S.C. § 1591; (4) violation of the California Trafficking Victims Protection Act ("CTVPA"), Cal. Civ. Code § 52.5; (5) sexual battery under California Civil Code § 1708.5; (6) assault under New York Penal Law §§ 110/120.00(1) and 120.15; (7) battery/sexual battery under New York Penal Law §§ 130.52, 130.55, 130.65, 130.35, and 130.90; (8) sexual battery under Nevada law; (9) false imprisonment under New York law; (10) false imprisonment under California law; (11) intentional infliction of emotional distress under California and New York law; (12) invasion of privacy under California Civil Code § 1708.8(a); (13) intrusion upon seclusion under California law; (14) breach of contract under California and New York law; and (15) quantum meruit/unjust enrichment under California and New York law. Am. Compl. ¶¶ 83-170.

On December 11, 2025, Combs moved to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) for failure to state a claim on which relief can be granted. *See* Mot.; Dkt. 62 ("Br."); Dkt. 61 ("Wolff Decl."). Sapp filed his opposition brief on January 15, 2026, *see* Dkt. 63 ("Opp."), and Combs replied on February 12, 2026, *see* Dkt. 65

("Reply"). With leave from the Court, Dkt. 68, Sapp filed a supplemental letter addressing new authority cited in the Reply. *See* Dkt. 69 ("Letter"). Thereafter, Combs submitted two notices of supplemental authority, *see* Dkt. 70 ("Suppl. Auth. I"); Dkt. 74 ("Suppl. Auth. II"), to which Sapp replied, *see* Dkt. 71 ("Auth. Resp. I"); Dkt. 75 ("Auth. Resp. II"). The motion is fully briefed. On August 18, 2026, the parties appeared before the Court for oral argument on the dismissal motion. *See* Aug. 18, 2026 Transcript ("Tr.").[2]

**LEGAL STANDARD**

A complaint is subject to dismissal "to the extent that it 'fails to state a claim upon which relief can be granted.'" *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110 (2d Cir. 2010) (alteration adopted) (quoting Fed. R. Civ. P. 12(b)(6)). On a motion seeking such dismissal, the Court "accept[s] the material facts alleged in the complaint as true and draw[s] all reasonable inferences in favor of the plaintiff." *Sherman v. Abengoa, S.A.*, 156 F.4th 152, 162 (2d Cir. 2025) (quoting *In re Nine W. LBO Sec. Litig.*, 87 F.4th 130, 140 (2d Cir. 2023)). The Court will not, however, "accept 'conclusory allegations or legal conclusions masquerading as factual conclusions.'" *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (quoting *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002)). Rather, a complaint must "contain[] sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 72 (2d Cir. 2021) (en banc) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

---

[2] At oral argument, Plaintiff clarified that his amended claims are solely against Combs and consented to the dismissal of claims against Defendants Doe Corporations 1-10 and Doe Defendants 11-20. *See* Tr. at 3:7-16.

## DISCUSSION

Sapp asserts two federal claims and thirteen state law claims under New York, California, and Nevada law. Am. Compl. ¶¶ 83-170. Because the conduct underlying those claims occurred between 2007 and 2012, the parties devote substantial attention to statutes of limitations and tolling. *See* Br. at 4-16; Opp. at 4-13; Reply at 1-6. "Although the lapse of a limitations period is an affirmative defense that a defendant must plead and prove, a statute of limitations defense may be raised in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint." *United States v. N. Adult Daily Health Care Ctr.*, 205 F. Supp. 3d 276, 303 (E.D.N.Y. 2016) (internal quotation marks and citation omitted). For ease of analysis, the Court addresses the claims in three groups: (1) federal claims, (2) claims under New York law, and (3) claims under California and Nevada law.

### I. Plaintiff's Federal Claims

Sapp brings two federal claims under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1589 *et seq.*: forced labor (Count II) and sex trafficking (Count III). *See* Am. Compl. ¶¶ 87-100.

Count II alleges forced labor in violation of 18 U.S.C. § 1589. *Id.* ¶¶ 87-93. "The TVPRA contains its own statute of limitations, which requires a plaintiff to file [his] claim within ten years from the date the cause of action arises." *Greenwood v. Am. Kennel Club*, No. 23-cv-10516 (LTS), 2024 WL 4435960, at *2 n.2 (S.D.N.Y. Oct. 4, 2024) (alteration adopted) (internal quotation marks and citation omitted); *see* 18 U.S.C. § 1595(c)(1) (providing that "[n]o action may be maintained . . . unless it is commenced not later than . . . 10 years after the cause of action arose"). "Courts have held that the statute involves a continuing tort, and that a single act occurring within the limitations period will preserve a claim based on all acts that were part of a single pattern." *Schneider v. OSG, LLC*, No. 22-cv-07686 (AMD) (VMS), 2024 WL

1308690, at *5 (E.D.N.Y. Mar. 27, 2024) (collecting cases). The Amended Complaint does not identify dates for most of the conduct underlying Count II. It alleges, however, that Sapp's "last encounter" with Combs occurred "in or around November 2012," Am. Compl. ¶ 69, and elsewhere alleges that Sapp "provided entertainment services to Combs" "[f]rom approximately 2007 to 2012," *id.* ¶ 165. Resolving those temporal ambiguities in Sapp's favor, the Court assumes for purposes of timeliness that the conduct underlying Count II continued through November 2012. The limitations period therefore expired no later than approximately November 2022, more than two years before Sapp commenced this action on February 4, 2025. *See* Compl.

Count III alleges sex trafficking in violation of 18 U.S.C. § 1591. Am. Compl. ¶¶ 94-100. It is governed by the same ten-year limitations period as Count II. *See* 18 U.S.C. § 1595(c)(1). As with Count II, the Court assumes that the conduct underlying Count III continued through November 2012. *See* Am. Compl. ¶¶ 69, 165. Even on that favorable assumption, the ten-year limitations period expired in approximately November 2022, and Sapp did not commence this action until February 4, 2025. *See* Compl.

Therefore, both federal claims are time-barred unless tolling applies. The only tolling doctrine invoked by Sapp that is applicable to those claims is federal equitable tolling. For the reasons set forth below, federal equitable tolling cannot save Counts II and III.

### A. Federal Equitable Tolling

The doctrine of federal equitable tolling "is exceedingly narrow," *Patraker v. Council on Env't of N.Y.C.*, No. 02-cv-07382 (LAK), 2003 WL 22703522, at *2 (S.D.N.Y. Nov. 17, 2003), and is "to be applied sparingly," *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). It permits a court, "under compelling circumstances, [to] make narrow exceptions to the statute of limitations in order 'to prevent inequity.'" *In re U.S. Lines, Inc.*, 318 F.3d 432, 436 (2d Cir. 2003) (quoting *Chao v. Russell P. Le Frois Builder, Inc.*, 291 F.3d 219, 223 (2d Cir. 2002)).

"Before a court may exercise discretion to grant equitable tolling, a litigant must demonstrate as a factual matter the existence of two elements: first, 'that some extraordinary circumstance stood in [his] way' and second 'that [he] has been pursuing [his] rights diligently.'" *Doe v. United States* (*Doe II*), 76 F.4th 64, 71 (2d Cir. 2023) (quoting *A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 144 (2d Cir. 2011)), *vacating and remanding Doe v. United States* (*Doe I*), No. 19-cv-01649, 2022 WL 903368 (D. Conn. Mar. 28, 2022). Those elements are "distinct," and the absence of either forecloses equitable tolling. *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 256 (2016); *see, e.g.*, *Lawrence v. Florida*, 549 U.S. 327, 336-37 (2007) (rejecting equitable tolling without addressing diligence because litigant failed to show extraordinary circumstances); *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005) (declining to apply equitable tolling even assuming that litigant had "satisfied the extraordinary circumstance test" "because he ha[d] not established the requisite diligence").

With respect to the first element, "[a]s a general matter, [the Second Circuit] set[s] a high bar to deem circumstances sufficiently 'extraordinary' to warrant equitable tolling." *Dillon v. Conway*, 642 F.3d 358, 363 (2d Cir. 2011). "To meet the extraordinary circumstances test, a plaintiff must prove that the cause of his delay was both beyond his control and unavoidable even with diligence." *Hosokawa v. Screen Actors Guild-Am., Fed'n of TV & Radio, Artists*, 234 F. Supp. 3d 437, 443 (S.D.N.Y. 2017) (internal quotation marks and citation omitted), *aff'd sub nom. Hosokawa v. N.Y. Loc. of Screen Actors Guild-Am. Fed'n of TV & Radio Artists*, 745 F. App'x 433 (2d Cir. 2018) (summary order). The inquiry focuses "not on 'the uniqueness of a party's circumstances' or the outrageousness of what they endured, 'but [on] the severity of the obstacle impeding compliance with a limitations period.'" *Doe II*, 76 F.4th at 72 (quoting *Smalls v. Collins*, 10 F.4th 117, 145 (2d Cir. 2021)); *see Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir. 2011) ("To secure equitable tolling, it is not enough for a party to show that he experienced

extraordinary circumstances. He must further demonstrate that those circumstances caused him to miss the original filing deadline.").

As for the second element, reasonable diligence does not demand "maximum feasible diligence," *Holland v. Florida*, 560 U.S. 631, 653 (2010) (citation omitted), and "[w]hat could reasonably be expected from a plaintiff [necessarily] depends . . . on the nature of the circumstances that []he faces," *Doe II*, 76 F.4th at 73. But some effort to pursue or protect one's rights ordinarily is required. *See, e.g.*, *Clark v. Hanley*, 89 F.4th 78, 106 (2d Cir. 2023) (affirming denial of tolling where prisoner plaintiff "undertook no effort at filing th[e] case for nearly five years after her claims accrued — already two years beyond the limitations period — and did not actually file it for another two years"); *Davis v. Jackson*, No. 15-cv-05359 (KMK), 2016 WL 5720811, at *11 (S.D.N.Y. Sept. 30, 2016) (finding, in case concerning inmate plaintiff, on a motion to dismiss, that "the [c]ourt would be hard pressed to conclude that [p]laintiff exercised reasonable diligence in pursuing his rights if, for the entire time [p]laintiff alleges he faced a threat of retaliation, he did nothing to seek protection from that threat of retaliation"). The plaintiff bears the burden of establishing "that he acted with reasonable diligence throughout the period he seeks to toll." *Doe v. Menefee*, 391 F.3d 147, 159 (2d Cir. 2004) (internal quotation marks and citation omitted).

Finally, it bears mention that because timeliness is an affirmative defense, "equitable tolling often raises fact-specific issues premature for resolution on a Rule 12(b)(6) motion, before a plaintiff can develop the factual record." *Clark*, 89 F.4th at 94. "Accordingly, to withstand a motion to dismiss based on a statute-of-limitations defense, a plaintiff need only plead facts that plausibly suggest equitable tolling should apply." *Levin v. Sarah Lawrence Coll.*, 747 F. Supp. 3d 645, 672 (S.D.N.Y. 2024). However, where the allegations bearing on tolling are set forth in the complaint and, accepted as true and construed in the plaintiff's favor,

do not plausibly satisfy the prerequisites for equitable tolling, the limitations issue may be resolved as a matter of law. *See, e.g.*, *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 81 (2d Cir. 2003), *as amended* (July 29, 2003) (affirming district court's denial of equitable tolling absent evidentiary hearing); *Levin*, 747 F. Supp. 3d at 674-75 (dismissing claims as time-barred without holding evidentiary hearing "because the [c]omplaint d[id] not sufficiently plead that extraordinary circumstances stood in [plaintiff's] way and prevented timely filing"); *Franck v. N.Y. Health Care, Inc.*, No. 21-cv-04955 (GHW) (JLC), 2022 WL 4363855, at *11-12 (S.D.N.Y. Sept. 21, 2022) (same), *report and recommendation adopted*, 2023 WL 2474559 (S.D.N.Y. Mar. 11, 2023); *Zheng v. United States*, No. 25-cv-03695 (MKV), 2026 WL 810388, at *7 (S.D.N.Y. Mar. 23, 2026) (same); *Richard v. Combs*, No. 24-cv-06848 (KPF), 2026 WL 1718089, at *11-12 (S.D.N.Y. June 12, 2026) (same); *Otis v. Combs*, No. 25-cv-01652 (LAP), 2026 WL 42492, at *5-6 (S.D.N.Y. Jan. 7, 2026) (same); *Gilmore v. Combs*, No. 24-cv-08440 (JPO), 2025 WL 1425326, at *3-4 (S.D.N.Y. May 16, 2025) (same). That is particularly so here, where Plaintiff amended his Complaint in response to timeliness arguments made in the initial motions to dismiss, *see* Dkt. 38 at 9, 15, 18, 21-22 (arguing that various claims were time-barred); Dkt. 44 at 4, 7, 11-16 (same), and supplemented his tolling-related allegations, *see* Am. Compl. ¶¶ 59-63, 76-81; *see generally* Compl. The Court now directs its focus to those allegations and the two federal claims in this case.

**B. Equitable Tolling Cannot Revive the Federal Claims**

In support of his argument that the Court should equitably toll the limitations period for his federal claims, Sapp points to Combs's "continuous death threats and coercion." Am. Compl. ¶¶ 93, 100. The Court does not minimize the gravity of the conduct Sapp alleges. According to the Amended Complaint, during the parties' encounters, Combs allegedly possessed firearms, physically confined Sapp, impaired him with substances, subjected him to

sexual and physical violence, secretly recorded sexual activity, threatened to disseminate those recordings, and made statements that Sapp reasonably understood as threats to kill or seriously harm him and his family. *See id.* ¶¶ 29, 33-44, 46-49, 53, 58-63. The Court accepts those allegations as true and does not question that such experiences could produce profound and lasting fear. That said, "[t]he failure to file a timely complaint out of fear of retaliation is, at least as a theoretical matter, an impediment that is within a plaintiff's control." *Davis*, 2016 WL 5720811, at *10.

Threats of retaliation may, in sufficiently extreme circumstances, constitute extraordinary circumstances impeding a plaintiff's compliance in a manner beyond his control. "Courts sometimes label this theory of tolling as so-called 'retaliation tolling.'" *Otis*, 2026 WL 42492, at *5 (citation omitted). The retaliation tolling doctrine stems from cases involving incarcerated plaintiffs who alleged that correction officers deterred them from filing suit. In that "unique context," courts have recognized that a prisoner may establish extraordinary circumstances by alleging specific facts showing that a reasonable fear of retaliation by prison officials prevented a timely filing. *Davis*, 2016 WL 5720811, at *11; *see, e.g.*, *id.* at *10-11 (finding that extraordinary circumstances may be found in the prison context "[g]iven th[e] unique context" of "forceful and sustained control over persons exercised . . . in . . . prisons" "and the substantial control that corrections officers exert over inmates" (citation omitted)); *Stone #1 v. Annucci*, No. 20-cv-01326 (RA), 2021 WL 4463033, at *12 (S.D.N.Y. Sept. 28, 2021) (acknowledging *Davis* but declining to apply equitable tolling where plaintiff "was released from prison," and therefore "no longer subject to the 'unique psychological environment' of incarceration," in 2016, "when her claim would still have been timely," and she "d[id] not allege facts establishing that [she] continued to have a specific and credible basis to fear retaliation once she was released" (citation omitted)); *Noguera v. Hasty*, No. 99-cv-08786 (KMW) (AJP), 2001 WL 243535, at *5-6

(S.D.N.Y. Mar. 12, 2001) (granting retaliation tolling, based on the Prison Litigation Reform Act, and observing that "the facts of th[e] case [we]re exceptional enough that there [wa]s little danger that the [c]ourt's ruling w[ould] create a loophole in the limitations for any inmate pressing a claim against a corrections officer"). Because correction officers exercise "substantial control" over those in their custody, threats made in the "unique psychological environment" of incarceration may possess an unusually powerful and immobilizing force. *Stone #1*, 2021 WL 4463033, at *12 (quoting *Davis*, 2016 WL 5720811, at *10). Absent such circumstances, "a plaintiff's experience of trauma, even significant trauma, cannot on its own legally justify the potentially indefinite tolling of a statute of limitations." *Id.*; *see also Davis,* 2016 WL 5720811, at *9 (observing that "the balance of the case law suggests that fear of retaliation is not a valid ground for equitable tolling" and collecting cases outside the prison context).

Outside the prison context, however, "the balance of the case law suggests that fear of retaliation is not a valid ground for equitable tolling." *Davis*, 2016 WL 5720811, at *9 (collecting cases); *see, e.g.*, *Sikhs for Just. v. Gandhi*, No. 13-cv-04920 (BMC), 2014 WL 2573487, at *5 (E.D.N.Y. June 9, 2014) (finding no basis for tolling in Torture Victim Protection Act case where plaintiff alleged he "received death threats" because he "provided no explanation for his failure to file suit after" he stopped receiving threats), *aff'd*, 641 F. App'x 29 (2d Cir. 2015) (summary order); *Pratt v. Stop & Shop Supermarket Co.*, No. 09-cv-05417 (JFB) (ETB), 2011 WL 579152, at *4 (E.D.N.Y. Feb. 9, 2011) (observing that, in employment cases, "courts have determined that fear of retaliation is not a proper basis for equitable tolling"); *Flores v. N.Y.C. Hum. Res. Admin.*, No. 10-cv-02407 (RJH), 2011 WL 3611340, at *5 (S.D.N.Y. Aug. 16, 2011) (same); *cf. Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 175 (S.D.N.Y. 2019) (finding, in the context of New York equitable tolling, that "fear of retaliation does not toll the statutes of limitations for the duration of a famous defendant's power and influence"); *Carter*

*v. W. Publ'g Co.*, 225 F.3d 1258, 1266 (11th Cir. 2000) ("Plaintiffs' purported fear of retaliation, however, is not a ground for equitable tolling. Otherwise, the doctrine of equitable tolling would effectively vitiate the statutory time requirement because a[] [party] could defer filing indefinitely so long as she had an apprehension about possible retaliation." (citations omitted)).

Plaintiff relies heavily on the Second Circuit's decision in *Doe II*, 76 F.4th 64, *see* Opp. at 6-9, 11, wherein the Second Circuit applied the principle of retaliation tolling outside of the carceral context for what appears to be the first time. There, an undocumented immigrant alleged that an ICE officer had regularly raped and physically abused her over approximately seven years, while using both threats of violence and his governmental authority over her immigration status to maintain control over her. 76 F.4th at 67-69. The officer had "the power to hasten the deportation of [Doe] and her family members," and shortly before their relationship ended, had expressly threatened to "kill her" if she disclosed his conduct. *Id.* at 72; *see id.* at 68-69. Against that backdrop, the Second Circuit reasoned that "[s]exual abuse perpetrated by an ICE agent against an undocumented immigrant may give the assailant's threats a similarly immobilizing effect as those of a prison official against someone in their custody." *Id.* at 72. The court accordingly held that the record permitted a factfinder to conclude that the officer's threats continued to prevent Doe from pursuing her claims even after the officer left ICE and the parties ceased communicating. *Id.* at 72-73; *see also id.* at 73 ("[W]e cannot say that no district court acting as factfinder could reasonably find that Doe acted 'as diligently as reasonably could have been expected *under the circumstances*.'" (quoting *Baldayaque v. United States*, 338 F.3d 145, 153 (2d Cir. 2003))).

*Doe II* does not broadly establish that a credible threat by a powerful person, or the lasting fear produced by serious abuse, necessarily suspends a limitations period. Rather, it requires attention to "the nature of the threat and the relative power of its source and its target" in

determining whether the circumstances created an obstacle sufficiently severe to prevent the plaintiff from exercising his legal rights. *Id.* at 72. The potentially sufficient obstacle in *Doe* was "that [defendant] violently raped [Doe] on a regular basis for a period of seven years, scarred her with acts of physical violence, treated her like his 'slave,' and threatened to further harm and even kill her," all while wielding the power as "a government official . . . to hasten [her] deportation." *Id.* Notably, the court did not find that the allegations were, as a matter of law, sufficient to warrant the exercise of equitable tolling. Rather, the court held that the summary judgment "record ma[de] *plausible* the inferences that years of violent sexual abuse and threats to Doe's life constituted an extraordinary circumstance preventing Doe from sooner pursuing her claims, and that she acted with reasonable diligence." *Id.* at 67 (emphasis added).

The circumstances that permitted potential tolling in *Doe II* involved a distinctive degree of coercive control. The defendant there not only subjected Doe to years of repeated rape and severe physical violence, but, as an ICE officer, he also possessed governmental authority over the immigration status of an undocumented person and used the prospect of deporting Doe and her family as an instrument of control. *Id.* at 67-72. And as that relationship ended in 2014, the officer issued an express death threat against Doe if she disclosed the abuse. *Id.* at 68-69. It was that combination — the "nature of the threat and the relative power of its source and its target," a power imbalance akin to that in the carceral context — that could permit a factfinder to conclude that the threat remained sufficiently immobilizing to render her 2018 complaint timely under equitable tolling principles, even after the defendant retired from ICE and ceased contact with Doe. *Id.* at 72.

The relationship alleged here was materially different. Combs undoubtedly possessed substantial wealth, industry influence, and, according to the Amended Complaint, the capacity for violence. Am. Compl. ¶¶ 29, 62-63. But Sapp's own chronology indicates that the degree of

control Combs exercised over him changed significantly over time. By approximately 2010, Sapp alleges that he had concluded that "Combs had no intention of supporting [his] [music] career" and "realized he needed to find a way to escape Combs'[s] manipulation and abuse." *Id.* ¶ 67. "During the next two years, [Sapp] made repeated attempts to distance himself from Combs." *Id.* ¶ 68. He alleges that Combs responded with threats, including reminders that he possessed explicit recordings of Sapp, yet Sapp continued to resist Combs's demands and ultimately ceased meeting with him by approximately November 2012. *Id.* ¶¶ 68-69. Although Combs thereafter "call[ed] persistently" for an unspecified number of "months" (as opposed to years) to pressure him to return, Sapp did not do so. *Id.* ¶ 69.

Unlike the circumstances in *Doe II*, where the defendant used governmental authority over Doe's immigration status together with repeated violence to subordinate her for years before he decided to cease contact with her, Sapp alleges that he progressively resisted Combs's efforts to control him, withdrew from the relationship notwithstanding the alleged threats, and ultimately remained apart from Combs. Combs's last alleged threat to Sapp was issued, at the latest, "months" after November 2012, *see id.*, yet Sapp did not file his action until 2025, *see* Compl. Those pleaded facts are materially distinct from *Doe II* in terms of the coerciveness of the relationship and the duration of time that elapsed after the threats ceased. Courts in this District have reached the same result on similar facts. *See, e.g.*, *Otis*, 2026 WL 42492, at *4-5 (rejecting tolling notwithstanding alleged death threats by Combs where there was no continuing contact or individualized control); *Richard*, 2026 WL 1718089, at *11-12 (same); *Gilmore*, 2025 WL 1425326, at *4 (distinguishing *Davis* because plaintiff had not alleged a relationship with Combs that demonstrated Combs's "'substantial control' over [plaintiff's] daily life" to a degree akin to that of an "inmate-plaintiff[]" (citation omitted)).

Separate from Combs's threats and coercion, Sapp invokes the "severe mental impairment directly caused by Defendant's abuse and threats" as "an independent basis for [federal] equitable tolling." Opp. at 12; *see id.* at 12-13; *see also* Am. Compl. ¶ 77 ("As a result of his experiences with Combs, Plaintiff has suffered from conditions including anxiety, depression, and recurring suicidal ideations."). Mental illness may, "under the appropriate circumstances," constitute an extraordinary circumstance sufficient to satisfy the first equitable tolling factor. *Bolarinwa v. Williams*, 593 F.3d 226, 231 (2d Cir. 2010); *see Harper*, 648 F.3d at 137 ("[M]edical conditions, whether physical or psychiatric, can manifest extraordinary circumstances, depending on the facts presented."); *Canales v. Sullivan*, 936 F.2d 755, 759 (2d Cir. 1991) ("[W]e believe that equitable tolling of the 60-day statute of limitations of Section 405(g) may be warranted in cases where an SSI disability claimant fails to seek judicial review in a timely manner because of mental impairment."), *on reh'g*, 947 F.2d 45 (2d Cir. 1991). A plaintiff relying on mental impairment as grounds for tolling must provide "a particularized description of how h[is] condition adversely affected h[is] capacity to function generally or in relationship to the pursuit of h[is] rights." *Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000). That is, he must "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing." *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000).

Sapp does not do so. In the damages portion of his Amended Complaint, Sapp alleges that "[s]ince his traumatic experiences with Combs," he "has suffered from . . . anxiety, depression, and recurring suicidal ideations" and has been "plagued by paranoia and haunted by painful memories." Am. Compl. ¶¶ 76-77. But while these allegations may certainly describe the damages he allegedly suffered due to Combs's actions, Sapp does not allege *how* those conditions prevented him from pursuing his rights during the period he seeks to toll. In his

opposition brief, he states that "[b]ecause he was so consumed with protecting his life, [his] ability to function was severely impaired, and he could not have taken steps to vindicate his rights or pursue a lawsuit against Defendant until Defendant was incarcerated." Opp. at 13. As a threshold matter, Sapp cannot supplement the Amended Complaint with his opposition brief. *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998). Even if he could, such a "conclusory and vague claim" is not enough. *Boos*, 201 F.3d at 185; *see, e.g.*, *id.* at 185 (finding, at summary judgment, that plaintiff's allegation "that she suffers from paranoia, panic attacks, and depression" was "manifestly insufficient to justify any further inquiry into tolling" because she lacked "a particularized description of how her condition adversely affected her capacity to function generally or in relationship to the pursuit of her rights" (internal quotation marks and citation omitted)); *Levin*, 747 F. Supp. 3d at 672, 674-75 (concluding that "equitable tolling [wa]s inadequately invoked" where plaintiff who alleged she had been "tortured, manipulated, and brainwashed . . . so horrifically that [she] w[as] unable to . . . pursue redress" failed to allege "how such psychological impact prevented her from filing suit at an earlier date" (citation omitted)); *Ganley v. City of New York*, 734 F. App'x 784, 785-86 (2d Cir. 2018) (summary order) (affirming district court's denial of equitable tolling for plaintiff who alleged "that the defendants' actions caused him to be involuntarily committed for psychiatric treatment and forcibly medicated for several years" because he did not "offer a particularized description of how his condition adversely affected his capacity to function generally or in relationship to the pursuit of his rights" (citation modified)); *Serrano v. USA United Transit Bus Inc.*, No. 09-cv-02710 (JG), 2009 WL 3698395, at *7 (E.D.N.Y. Nov. 3, 2009) (finding that plaintiff's "assertion that [he] suffered from post-traumatic stress disorder and depression d[id] not provide a sufficient basis for equitable tolling, because [he] simply d[id] not explain how the illness stood in the way of [his] ability to comply with the limitations period"), *aff'd sub nom. Serrano v. USA*

*United Transit, Inc.*, 402 F. App'x 574 (2d Cir. 2010) (summary order); *Quinn v. United States*, No. 20-cv-03261 (KMK), 2021 WL 738756, at *10 (S.D.N.Y. Feb. 25, 2021) (holding that plaintiff's allegations that he was "depressed and psychologically exhausted" were "insufficient to warrant equitable tolling" absent a "concrete explanation of how his illness incapacitated him and prevented him from filing a timely action" and collecting cases).

Even if Combs's threats or Sapp's mental impairments constituted an extraordinary circumstance for some period after the parties' relationship ended, the federal claims independently fail on reasonable diligence. *Doe II* notably did not relax the separate reasonable diligence requirement for equitable tolling. The Second Circuit expressly cautioned that "[t]he extraordinary nature of the abuse Doe suffered d[id] not absolve her of the independent requirement to show that she has been pursuing her rights diligently." *Doe II*, 76 F.4th at 73. Indeed, though the Second Circuit initially concluded that the summary judgment record permitted an inference that Doe had acted "as diligently as reasonably could have been expected *under the circumstances*," *id.* (citation omitted), that was not the ultimate disposition of her tolling request.

Ultimately, on remand, the district court found that Doe had *not* exercised reasonable diligence, a conclusion that the Second Circuit affirmed. *Doe v. United States* (*Doe III*), No. 19-cv-01649, 2024 WL 4224467, at *7 (D. Conn. Aug. 12, 2024), *aff'd*, *Doe v. United States* (*Doe IV*), No. 24-2374-cv, 2025 WL 3277051 (2d Cir. Nov. 24, 2025) (summary order). Among other facts, the district court considered that Doe knew that she had a potential claim, had no contact with the defendant after 2014, and nevertheless failed to disclose the abuse or seek assistance despite repeated interactions with an immigration attorney, law enforcement officers, FBI agents, and medical providers who could have assisted her. *Id.* at *5-6; *see also id.* at *6 ("[I]t bears repeating that [p]laintiff had no contact with [defendant] after 2014."). In affirming, the Second

Circuit reiterated that reasonable diligence remained an independent prerequisite and held that, once the district court found that Doe had not satisfied the reasonable diligence requirement, it properly denied equitable tolling without deciding whether the extraordinary circumstances requirement was satisfied. *See Doe IV*, 2025 WL 3277051, at *3.

Sapp has not satisfied that prerequisite here. To satisfy the diligence requirement, Sapp must plead facts that plausibly establish that he pursued his rights with the diligence reasonably possible under the circumstances during the period he asks the Court to toll. *See Harper*, 648 F.3d at 138-39. Yet the Amended Complaint does not allege any step taken by Sapp toward vindicating his rights, obtaining protection from Combs's alleged threats, or seeking legal assistance for over a decade after his final 2012 encounter with Combs. To the contrary, although Sapp alleges no direct contact between the parties following the "months" of continued calls from Combs in the aftermath of their final November 2012 encounter, Am. Compl. ¶¶ 69-70, Sapp asserts that he nevertheless waited over a decade to begin seeking legal representation, *id.* ¶ 71. That extended delay despite an absence of contact demonstrates a lack of due diligence. *See, e.g.*, *Davis*, 2016 WL 5720811, at *8, *11 (observing that "the [c]ourt would be hard pressed to conclude that [p]laintiff exercised reasonable diligence" given failure to take act for "more than three years"); *Clark*, 89 F.4th at 106 (finding lack of due diligence given plaintiff's failure to act for "nearly five years after her claims accrued").

Attempting to distinguish his case, Plaintiff stressed at oral argument that Combs's threats were forward-looking, which, in Plaintiff's view, rendered their impact and his resultant fear sufficiently continuous to merit tolling. *See* Tr. at 29:16-32:18. As a threshold matter, the cases Sapp sought to distinguish also involved forward-looking threats. *See, e.g.*, *Otis*, 2026 WL 42492, at *1 (recounting alleged threats to plaintiff's life if he "sa[id] a word to anybody about" the alleged sexual assault (citation omitted)); *Richard*, 2026 WL 1718089, at *2 (detailing

alleged threats that Combs could make people "go missing" and "make things go away" (citation omitted)). But even if they did not, the forward-looking nature of a threat cannot, standing alone, justify indefinite tolling of the limitations period. The defendant must take subsequent, concrete actions that reinforce, renew, or give continuing effect to the threat. *See Stone #1*, 2021 WL 4463033, at *12 (finding that "a plaintiff's experience of trauma, even significant trauma, cannot on its own legally justify the potentially indefinite tolling of a statute of limitations" and declining to apply tolling where plaintiff did "not allege facts establishing that [she] continued to have a specific and credible basis to fear retaliation"). Even in *Doe II*, Doe filed her action four years after the last threat was issued, 76 F.4th at 68-69, as opposed to here, where Combs's final threat was around 2012, *see* Am. Compl. ¶ 69, and Sapp waited over twelve years to file suit, *see* Compl. That timeframe does not support a plausible claim of diligence. *See Richard*, 2026 WL 1718089, at *12 ("[A]t some point in the twelve to thirteen years between the end of [p]laintiff's interactions with [defendants] and the filing of her suit, these defendants' power and control over [p]laintiff dissipated such that she was not diligent in pursuing her rights."); *Otis*, 2026 WL 42492, at *5-6 ("Plaintiff alleges insufficient facts to infer that Combs' alleged post-assault threats were 'extraordinary circumstances' that prevented [p]laintiff from filing this suit for thirteen years," during which plaintiff lacked "*any* further contact, direct or otherwise, with Combs[.]"); *Stone #1*, 2021 WL 4463033, at *5, *12 (declining to apply equitable tolling where plaintiff "was released from prison in 2016" but failed to file suit until 2020, despite no longer being "subject to the 'unique psychological environment' of incarceration" (citation omitted)). Permitting indefinite tolling whenever there is a forward-looking threat of violence would suspend the limitations period in perpetuity, allowing the tolling exception to swallow the rule.

The October 2024 contact alleged in the Amended Complaint does not move the needle. Sapp claims only that an unidentified "individual representing Combs" contacted him and

"insist[ed] on an in-person meeting." Am. Compl. ¶ 72. He does not allege that the individual personally threatened him, invoked the sexually explicit recordings, or conveyed any threat on Combs's behalf. Moreover, by October 2024, the limitations period had long since expired. Absent sufficient antecedent tolling to keep that period open, a later event cannot revive an already expired federal claim. *See Lopez v. Thermo Tech Mech. Inc.*, No. 20-cv-09113 (LTS) (BCM), 2023 WL 3756883, at *7 (S.D.N.Y. May 31, 2023) (collecting cases and holding that, where plaintiff's claims "were already time-barred," those claims could not "be revived through tolling," notwithstanding defendants' conduct). Accordingly, the federal claims are time-barred.

## II. Plaintiff's State Law Claims

With the federal claims dismissed, the Court has jurisdiction over Sapp's thirteen state law claims through supplemental jurisdiction. *See* 28 U.S.C. § 1367(a) (granting district courts "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy").[3] However, the Court need not exercise supplemental jurisdiction in all cases. *See id.* § 1367(c)(3) (permitting district courts to "decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction"). Rather, it must "balance [the] factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity" to determine if its exercise of jurisdiction would be appropriate. *Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir. 2013) (quoting *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 306 (2d Cir. 2003)).

---

[3] Sapp confirmed at oral argument that this action is before the Court solely based on federal question jurisdiction. *See* Tr. at 3:18-4:3; *see also* Am. Compl. ¶ 6.

Those factors favor the exercise of supplemental jurisdiction over all state law claims — with the exception of Count I — because, as discussed more fully below, they are plainly time-barred. *See, e.g.*, *Powell v. Lab Corp.*, No. 17-cv-03632 (JMA) (GRB), 2018 WL 6814371, at *9-10 (E.D.N.Y. Dec. 27, 2018) (exercising supplemental jurisdiction to dismiss time-barred state law claims "because those claims [we]re frivolous, and the defendants should not be subject to additional frivolous litigation in state court"), *aff'd*, 789 F. App'x 237 (2d Cir. 2019) (summary order); *Keitt v. City of New York*, No. 09-cv-05663 (PKC) (DF), 2010 WL 3466175, at *10 n.16 (S.D.N.Y. Aug. 9, 2010) (exercising supplemental jurisdiction "where [p]laintiff's state-law claims [we]re plainly time-barred" because "it would be in the interest of judicial economy to dismiss them on that ground"), *report and recommendation adopted*, 2010 WL 3466079 (S.D.N.Y. Sept. 2, 2010); *Mansour v. Stanley*, No. 25-cv-07633 (CM), 2026 WL 636874, at *7, *13 (S.D.N.Y. Mar. 6, 2026) (exercising supplemental jurisdiction to dismiss state law claims as time-barred because "the governing state law [wa]s straightforward" and resolution of the claims "promote[d] efficiency and avoid[ed] unnecessary duplication of judicial and party resources"), *appeal filed*, No. 26-600 (2d Cir. Mar. 13, 2026). The Court turns to those claims next.

**A. Plaintiff's New York State Law Claims**

The Court will first address Counts VI, VII, and IX, which allege assault, battery, and false imprisonment, respectively, under New York law. Am. Compl. ¶¶ 114-23, 129-33.[4] All three claims are subject to a one-year limitations period, *see* N.Y. C.P.L.R. § 215(3) ("CPLR 215(3)"), which begins to run upon injury, *Moore v. Keller*, 498 F. Supp. 3d 335, 347 (N.D.N.Y. 2020) ("[C]laims for assault and battery accrue when they happen."); *Tchatat v. City of New*

[4] Because Counts XI, XIV, and XV invoke both New York and California law, *see* Am. Compl. ¶¶ 139-43, 158-70, they are addressed alongside the out-of-state claims in Section II.B below.

*York*, No. 14-cv-02385 (LGS), 2015 WL 5091197, at *14 (S.D.N.Y. Aug. 28, 2015) ("Causes of action based on false arrest and false imprisonment accrue upon the subject's release from confinement[.]" (quoting *Bellissimo v. Mitchell*, 995 N.Y.S.2d 603, 605 (N.Y. App. Div. 2014))). The alleged conduct underlying these claims ended no later than 2012, *see* Am. Compl. ¶¶ 69, 165; thus, the statute of limitations for Counts VI, VII, and IX expired over a decade before Sapp commenced this action in early 2025, *see* Compl.

Plaintiff again relies on tolling doctrines — this time, New York's duress tolling and equitable estoppel theories — to save his claims. Opp. at 4-6. Neither applies.

*1. Duress Tolling*

"New York construes tolling doctrines as narrowly as possible." *Overall v. Est. of Klotz*, 52 F.3d 398, 404 (2d Cir. 1995) (citing *McCarthy v. Volkswagen of Am., Inc.*, 435 N.E.2d 1072, 1074 (N.Y. 1982)). "Under the doctrine of duress tolling, the limitations period is tolled where the underlying tort has duress as an element of the offense, and the tortious conduct persists as a continuous wrong." *Melendez v. Greiner*, 477 F. App'x 801, 803 (2d Cir. 2012) (summary order) (alteration adopted) (internal quotation marks and citation omitted); *see Zoe G. v. Frederick F.G.*, 617 N.Y.S.2d 370, 371 (N.Y. App. Div. 1994) ("When duress is part of the causes of action alleged, the [s]tatute of [l]imitations is tolled until the duress terminates[,] as such conduct is considered a continuous wrong."); *see also D'Onofrio v. Mother of God with Eternal Life*, 79 N.Y.S.3d 902, 908 (N.Y. Sup. Ct. 2018) ("Although such duress does not prevent the accrual of the cause of action, it tolls the running of the limitations statute because the offensive conduct is regarded as a continuous wrong." (citation omitted)). The doctrine requires both "threats or force by the defendant[] and the submission of the plaintiff's free will to those threats." *Overall*, 52 F.3d at 404. Critically, "the tortious conduct must continue uninterrupted" for the limitations period to be tolled. *Id.* at 405. Thus, continuing fear or

continuing psychological effects from a completed tort do not themselves extend the underlying tort through the limitations period. *See id.* at 405-06 ("It does not matter for purposes of applying New York's statute of limitations that [plaintiff] may still suffer psychological scars from childhood abuse."); *cf. York v. York*, 228 N.Y.S.3d 638, 641 (N.Y. App. Div. 2025) ("The doctrine [of continuing wrongs] allows only tolling 'predicated on continuing unlawful acts and not on the continuing effects of earlier unlawful conduct.'" (quoting *Salomon v. Town of Wallkill*, 107 N.Y.S.3d 420, 422 (N.Y. App. Div. 2019))); *see also Geiss*, 383 F. Supp. 3d at 175 ("[T]he doctrine of duress and the doctrine of continuing wrongs are interconnected. . . . [T]he duress that forms the cause of action is . . . considered a continuing wrong." (internal quotation marks and citation omitted)).

*2. Equitable Estoppel*

"Equitable estoppel is an extraordinary remedy," *Pulver v. Dougherty*, 871 N.Y.S.2d 495, 496 (N.Y. App. Div. 2009), that is to be "invoked sparingly and only under exceptional circumstances," *Townley v. Emerson Elec. Co.*, 702 N.Y.S.2d 728, 729 (N.Y. App. Div. 2000) (citation omitted). It applies "[1] where the defendant conceals from the plaintiff the fact that he has a cause of action [or] [2] where the plaintiff is aware of his cause of action, but the defendant induces him to forego suit until after the period of limitations has expired." *Koenigsberg v. Bd. of Trs. of Columbia Univ.*, No. 24-2519-cv, 2025 WL 1540252, at *2 (2d Cir. May 30, 2025) (summary order) (alterations in original) (citation omitted); *see Zumpano v. Quinn*, 849 N.E.2d 926, 929 (N.Y. 2006) ("[E]quitable estoppel will apply where plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action." (internal quotation marks and citation omitted)). "It is . . . fundamental to the application of equitable estoppel for plaintiffs to establish that subsequent and specific actions by defendants somehow kept them from timely bringing suit." *Zumpano*, 849 N.E.2d at 929; *see Ross v. Louise Wise Servs., Inc.*,

868 N.E.2d 189, 198 (N.Y. 2007) ("For the doctrine to apply, a plaintiff may not rely on the same act that forms the basis for the claim — the later fraudulent misrepresentation must be for the purpose of concealing the former tort."). And "[t]he burden is on the plaintiff to establish that the action was brought within a reasonable time after the facts giving rise to the estoppel have ceased to be operational." *Weizmann Inst. of Sci. v. Neschis*, 421 F. Supp. 2d 654, 684 (S.D.N.Y. 2005) (quoting *Simcuski v. Saeli*, 377 N.E.2d 713, 717 (N.Y. 1978)).

*3. New York's Tolling Doctrines Do Not Apply to Plaintiff's New York Claims*

Sapp's reliance on threats and fear, *see* Am. Compl. ¶¶ 118, 123, 133, does not revive his claims under New York duress tolling because the assault, battery, and false imprisonment themselves did not continue uninterrupted. *See Overall*, 52 F.3d at 405. Specifically, Sapp alleges that his last in-person encounter with Combs occurred in or around November 2012 and that Combs continued calling him "for months" thereafter. Am. Compl. ¶ 69. Even accepting that Combs's earlier threats continued to frighten Sapp, the continuing effect of a threat is analytically different from a continuation of the underlying tort. *See Richard*, 2026 WL 1718089, at *7; *Otis*, 2026 WL 42492, at *5-6. Accordingly, New York duress tolling cannot extend Sapp's limitations periods beyond the end of the alleged tortious conduct in approximately 2012.

Nor does equitable estoppel apply because Sapp identifies no subsequent "fraud, misrepresentations[,] or deception" that concealed the claims or induced him reasonably to believe suit was unnecessary. *See Zumpano*, 849 N.E.2d at 929. Sapp instead relies on threatened dissemination of intimate recordings and threats to him and his family to support his equitable estoppel theory. *See* Opp. at 4-5; Am. Compl. ¶¶ 59-61, 65, 68. Those allegations are relevant to duress and to federal equitable tolling, addressed above. But they fit less comfortably within the framework of New York equitable estoppel because Sapp does not allege that Combs

concealed the existence of Sapp's claims from him or later misrepresented facts on which Sapp reasonably relied in allowing a limitations period to expire. Indeed, Sapp alleges (1) that he knew by 2010 that Combs did not intend to advance his career, (2) that his "last encounter with Combs was in . . . November 2012," and (3) that he has since "experienced a strong and unrelenting desire to come forward about Combs'[s] abuse." Am. Compl. ¶¶ 67, 69-70. In other words, Sapp alleges not concealment of his claims, but intimidation that deterred him from pursuing claims of which he was aware.

There is some uncertainty as to whether threats, as distinct from fraud, misrepresentations, or deception, may constitute the type of affirmative misconduct that can give rise to equitable estoppel under New York law. *See Richard*, 2026 WL 1718089, at *9-10 & n.6 (discussing differing formulations of the doctrine in federal and New York cases and concluding that threats may not give rise to equitable estoppel); *Geiss*, 383 F. Supp. 3d at 172-73 (similar); *see also Canosa v. Ziff*, No. 18-cv-04115 (PAE), 2019 WL 498865, at *8 (S.D.N.Y. Jan. 28, 2019) (finding that "[r]eprehensible though acts of intimidation to achieve a victim's silence would be, they do not trigger" the doctrine of equitable estoppel). However, the Court need not resolve that question because even assuming intimidation may trigger equitable estoppel, Sapp has not plausibly alleged the independent prerequisite of reasonable diligence. *See supra* Section I.B; *see also Milan v. Wertheimer*, No. 14-cv-02448 (SLT), 2014 WL 4370647, at *6 (E.D.N.Y. Sept. 2, 2014) ("Due diligence on the part of the plaintiff in bringing an action is an essential element of equitable estoppel." (omission adopted) (quoting *Doe v. Holy See (State of Vatican City)*, 793 N.Y.S.2d 565, 569 (N.Y. App. Div. 2005))), *aff'd*, 808 F.3d 961 (2d Cir. 2015).

In sum, the one-year limitations period bars all three claims, and neither of New York's tolling doctrines can revive them. Counts VI, VII, and IX are dismissed.

**B. Plaintiff's California and Nevada State Law Claims**

The nine remaining claims arise under California and Nevada law. *See* Am. Compl. ¶¶ 101-13, 134-70 (Counts IV, V, and X-XV); *id.* ¶¶ 124-28 (Count VIII). Because this Court sits in New York and exercises supplemental jurisdiction over those claims, they are subject to New York's borrowing statute, N.Y. C.P.L.R. § 202 ("CPLR 202"). *See Synergetics USA, Inc. v. Alcon Lab'ys, Inc.*, No. 08-cv-03669 (DLC), 2009 WL 2016872, at *2 (S.D.N.Y. July 9, 2009) ("A federal court considering state law claims under supplemental jurisdiction applies the choice of law principles of the state in which the court sits[, and] New York applies a 'borrowing statute,' N.Y. C.P.L.R. Section 202, for actions filed by a nonresident." (citation omitted)). CPLR 202 provides that where, as here, a nonresident plaintiff brings an out-of-state claim, that claim must satisfy the statute of limitations of both New York and the foreign jurisdiction where the claim accrued. *See* N.Y. C.P.L.R. § 202. That is, "the court must apply the *shorter* limitations period, including all relevant tolling provisions, of either: (1) New York; or (2) the state where the cause of action accrued." *Stuart v. Am. Cyanamid Co.*, 158 F.3d 622, 627 (2d Cir. 1998) (emphasis added); *accord Thea v. Kleinhandler*, 807 F.3d 492, 497 (2d Cir. 2015). When the foreign period is borrowed, the foreign jurisdiction's extensions and tolls generally travel with that period, while the New York side of the comparison incorporates applicable New York rules. *Norex Petroleum Ltd. v. Blavatnik*, 16 N.E.3d 561, 569 (N.Y. 2014) (citation omitted).

The First Department recently confirmed in *Ark448 Doe v. Maryknoll* that a foreign revival statute does not eliminate CPLR 202's independent New York timeliness requirement. *Ark448 Doe*, 251 A.D.3d 401, 402 (N.Y. App. Div. 2026). There, a nonresident plaintiff whose out-of-state claim had been revived under New Jersey law still had to establish that the claim was timely under New York law. *Id.* So too here. Even though California and Nevada have enacted

generous revival or limitations provisions for sexual assault claims, *see infra* Sections II.B.1-3, Sapp's claims must nevertheless fall within New York's shorter limitations period — subject to applicable tolling provisions discussed above. With that principle in mind, the Court addresses each claim in turn.[5]

*1. Count IV: California Trafficking Victims Protection Act*

Count IV alleges that Combs violated the CTVPA, Cal. Civ. Code § 52.5. *See* Am. Compl. ¶¶ 101-08. Section 52.5 supplies a seven-year limitations period running from "the date on which the trafficking victim was freed from the trafficking situation." Cal. Civ. Code § 52.5(c). Sapp alleges that his encounters with Combs ended no later than 2012, *see* Am. Compl. ¶¶ 69, 165, so the ordinary California period expired no later than 2019.

The CTVPA, however, contains its own express statutory estoppel provision. Under that provision, "[a] defendant is estopped from asserting a defense of the statute of limitations if the expiration of the statute is due to conduct by the defendant inducing the plaintiff to delay the filing of the action, or due to threats made by the defendant causing the plaintiff duress." Cal. Civ. Code § 52.5(d)(3). The statute also permits suspension of the limitations period where a plaintiff "could not have reasonably discovered the cause of action due to circumstances resulting from the trafficking situation, such as psychological trauma." *Id.* § 52.5(e).

Even applying Section 52.5's tolling provisions, the Court finds that Sapp has not plausibly alleged that Combs's threats caused the California limitations period to remain suspended beyond 2019. With respect to Section 52.5(d)(3)'s threat requirement, the last

[5] In general, the Amended Complaint does not tie specific factual allegations to particular encounters between Sapp and Combs at identified locations, instead alleging broadly that their encounters occurred "in cities including Las Vegas, New York City, Los Angeles, and Miami." Am. Compl. ¶ 29. For purposes of the Court's CPLR 202 analysis, the Court will assume that claims brought under California and Nevada law "accrued" in those states.

specifically pleaded threats occurred no later than "months" after November 2012, *see* Am. Compl. ¶ 69, and no subsequent threat or coercive act by Combs is alleged for more than a decade. The October 2024 contact alleges no threat at all and occurred years after the California seven-year period otherwise expired. *See id.* ¶ 72. As for Section 52.5(e)'s psychological trauma exception, though Sapp alleges that "[a]s a result of his experiences with Combs, [he] has suffered from conditions including anxiety, depression, and recurring suicidal ideations," *id.* ¶ 77, he also concedes that he understood that he had a cause of action by at least 2012, *see id.* ¶¶ 69-70. That is, he acknowledges that his psychological trauma did not prevent him from "reasonably discover[ing] the cause of action," as Section 52.5(e) requires. Cal. Civ. Code § 52.5(e). Accordingly, neither statutory tolling provision plausibly extends the California limitations period through February 2025, and Sapp does not suggest in the alternative that any California equitable tolling doctrine does so. Because California law therefore bars Count IV, the Court need not reach the New York side of the CPLR 202 analysis. Count IV is dismissed as untimely.

### 2. *Count V: Sexual Battery Under California Law*

Count V alleges nonconsensual sexual contact under California law. *See* Am. Compl. ¶¶ 109-13. California previously imposed a ten-year limitations period on sexual battery claims. *See* Cal. Civ. Proc. Code § 340.16(a)(1); *see also Matthews v. Pinchback*, No. 22-cv-1329, 2024 WL 5182165, at *3 (E.D. Cal. Dec. 20, 2024) ("The statute of limitations for [p]laintiff's sexual assault and battery claim is ten years."). However, California law has changed materially since the parties briefed the motion. Effective January 1, 2026, California Code of Civil Procedure § 340.16(e) revived adult sexual-assault damages claims "that would otherwise [have] be[en] barred before January 1, 2026, solely because the applicable statute of limitations . . . had expired" and expressly permits qualifying claims "already pending in court on January 1, 2026,"

to proceed. Cal. Civ. Proc. Code § 340.16(e)(1). The statute also "revives any related claims . . . arising out of the sexual assault[.]" *Id.* § 340.16(e)(6). Thus, the California limitations period is no longer an obstacle to Count V.

CPLR 202 nevertheless supplies an independent New York bar. *See Ark448 Doe*, 251 A.D.3d at 402. "Because there is no independent tort for sexual assault in New York, the analogous New York cause of action to California's statutory cause of action for sexual battery is the intentional tort of battery," *Barzi v. Combs*, No. 24-cv-07973 (RA), 2026 WL 366811, at *2 (S.D.N.Y. Feb. 10, 2026) (internal quotation marks and citation omitted), which is subject to a one-year limitations period, *see* N.Y. C.P.L.R. § 215(3).[6] As discussed with respect to the New York tolling analysis above, neither New York duress tolling nor equitable estoppel renders the claim timely. *See supra* Section II.A.3. Thus, Sapp's claim, brought at least twelve years after it accrued, falls well outside of the one-year limitations period and is accordingly dismissed.

*3. Count VIII: Sexual Battery Under Nevada Law*

Count VIII alleges sexual battery under Nevada law. *See* Am. Compl. ¶¶ 124-28. Sapp asserts that this claim is timely because Nevada Senate Bill 129 ("SB 129") retroactively "removed the statute of limitations for civil actions arising from sexual assault or sexual battery," "effective May 31, 2023." *Id.* ¶ 127. Sapp is correct that Nevada law no longer imposes any

[6] For "incidents occurring on or after September 18, 2019," N.Y. C.P.L.R. § 213-c supplies a twenty-year limitations period. Decision + Order on Motion at 4-5, *Doe v. Combs*, No. 152014/2025 (N.Y. Sup. Ct. Aug. 18, 2025), Dkt. 50. As amended in 2019, the statute generally gives a plaintiff twenty years to bring a civil claim "for physical, psychological[,] or other injury" resulting from conduct constituting one of the statute's enumerated sexual offenses, including rape and first-degree aggravated sexual abuse. *Tate v. Combs*, No. 24-cv-08810 (LAK), 2025 WL 1446828, at *1 (S.D.N.Y. May 20, 2025) (quoting N.Y. C.P.L.R. § 213-c). But "Section 213-c does not revive actions that would otherwise be time-barred," *id.* at *2, and therefore cannot revive Sapp's claims, which accrued no later than 2012, *see* Am. Compl. ¶¶ 69, 165.

limitations period on his claim.[7] Even so, the Court finds that Count VIII is untimely in light of CPLR 202.

CPLR 202 requires Sapp's claim to be separately timely under New York law. *See Ark448 Doe*, 251 A.D.3d at 402. As discussed above, the New York analogue for sexual battery is intentional battery, *see Barzi*, 2026 WL 366811, at *2, which is subject to CPLR 215(3)'s one-year limitations period and cannot be revived through tolling, *see supra* Section II.A.3. Any alleged Nevada-based sexual battery necessarily occurred by 2012, *see* Am. Compl. ¶¶ 69, 165, and is therefore untimely under New York law. For that reason, Count VIII is dismissed.

*4. Count X: False Imprisonment Under California Law*

Count X alleges that "Combs falsely imprisoned Plaintiff in California." Am. Compl. ¶ 135; *see also id.* ¶¶ 134-38. Under CPLR 202, Plaintiff's false imprisonment claim must independently be timely under New York's corresponding limitations law. *See Ark448 Doe*, 251 A.D.3d at 402. As discussed in Section II.A.3, New York imposes a one-year limitations period on false imprisonment claims, which neither of the relevant New York tolling doctrines extends

[7] SB 129, codified at Nevada Revised Statutes ("NRS") § 11.217, retroactively eliminated the limitations period for civil sexual assault claims, *see* Nev. Rev. Stat. § 11.217. NRS § 11.217 applies to injuries arising from "sexual assault" as defined by NRS § 200.366. *Id.* NRS § 200.366, in turn, defines sexual assault as "[s]ubject[ing] another person to sexual penetration, or forc[ing] another person to make a sexual penetration on themselves or another" without the person's consent. Nev. Rev. Stat. § 200.366. Count VIII identifies the Nevada conduct as "including but not limited to" repeated nonconsensual touching of Sapp's penis. Am. Compl. ¶ 125. Such conduct does not fall under the statutory definition of sexual assault. *See Cosby v. Leslie*, 583 P.3d 981, 983 (Nev. 2026) (en banc) (concluding, on a certified question from the United States District Court for the District of Nevada, that "a perpetrator does not commit sexual assault under NRS 200.366 by forcing a victim to masturbate the perpetrator, so long as there is no intrusion into a genital or anal opening"). However, drawing all reasonable inferences in Sapp's favor, the Court finds that he nevertheless asserts sufficient facts to invoke NRS § 11.217 because he alleges that Combs forced him to "engag[e] in vaginal intercourse" with third parties "on multiple occasions in Los Angeles, New York, and Las Vegas." Am. Compl. ¶¶ 44-45. Such acts plainly fall within NRS § 200.366's definition of sexual assault. *See* Nev. Rev. Stat. § 200.366 (including within its definition of sexual assault, "forc[ing] another person to make a sexual penetration on . . . another").

here. *See* N.Y. C.P.L.R. § 215(3); *see also supra* Section II.A.3. That one-year period therefore bars Count X.

*5. Count XI: Intentional Infliction of Emotional Distress Under New York and California Law*

Count XI asserts intentional infliction of emotional distress ("IIED") under New York and California law based on alleged "rape, sexual assault, death threats, false imprisonment, covert drugging, covert surveillance, threats to disseminate the sex tapes resulting from the covert surveillance, and nonpayment or underpayments." Am. Compl. ¶ 140; *see also id.* ¶¶ 139-43. New York IIED claims are subject to CPLR 215(3)'s one-year limitation period. *See Teller v. Galak*, 80 N.Y.S.3d 106, 108 (N.Y. App. Div. 2018) ("The cause of action alleging intentional infliction of emotional distress is governed by a one-year statute of limitations."). All conduct underlying Sapp's IIED claim ended by 2012. *See* Am. Compl. ¶¶ 69, 165. That places Sapp's claim outside of the one-year limitations period, which, as discussed, cannot be extended through either of New York's tolling doctrines. *See supra* Section II.A.3. Because Sapp's claim is "time-barred under New York law," the Court "need not determine whether h[is] actions would survive in some other jurisdiction." *Overall*, 52 F.3d at 402. Count XI is dismissed.

*6. Count XII: California Civil Code § 1708.8(a)*

Count XII alleges that Combs violated California Civil Code § 1708.8(a) by covertly recording Sapp engaged in intimate sexual activities in "Combs'[s] home and hotel rooms." Am. Compl. ¶ 145; *see also id.* 144-50. Section 1708.8(a) creates liability for a "physical invasion of privacy" undertaken "to capture any type of visual image . . . of the plaintiff engaging in a private . . . activity" that "occurs in a manner that is offensive to a reasonable person." Cal. Civ. Code § 1708.8(a). The applicable limitations period is accordingly two years. *Shah v. MyFitnessPal, Inc.*, 824 F. Supp. 3d 906, 914 (N.D. Cal. 2026) ("The applicable statute[] of

limitations range[] [is] two years for [an] invasion-of-privacy . . . claim[.]" (citing Cal. Civ. Proc. Code § 335.1)). Even assuming California's revival statute could treat this privacy theory as a claim "related" to his sexual assault claim, *see* Cal. Civ. Proc. Code § 340.16(e)(6), the independent New York limitations period for an analogous privacy injury expired long before 2025.

"New York State does not recognize the common law tort of invasion of privacy except to the extent it comes within Civil Rights Law §§ 50 and 51." *Farrow v. Allstate Ins. Co.*, 862 N.Y.S.2d 92, 93 (N.Y. App. Div. 2008); *accord Cohen v. Casper Sleep Inc.*, Nos. 17-cv-09325 (WHP) et al., 2018 WL 3392877, at *8 (S.D.N.Y. July 12, 2018). Civil Rights Law Sections 50 and 51 concern commercial appropriation of one's name or likeness, a substantively different tort from invasion of privacy. *See* N.Y. Civ. Rights Law §§ 50, 51. "Where the substance of a non-New York claim does not clearly correspond to the substance of any claim under New York law, the Court must apply the statute of limitations that applies to the most analogous cause of action." *Wultz v. Bank of China Ltd.*, 306 F.R.D. 112, 115 (S.D.N.Y. 2013) (citation modified). California Civil Code § 1708.8(a) imposes liability for a knowing intrusion undertaken for the purpose of capturing a plaintiff engaged in private activity and thus sounds principally in intentional invasion of privacy. *See* Cal. Civ. Code § 1708.8(a). To be sure, Section 1708.8(a) expressly requires an unauthorized entry or trespass, which could suggest that N.Y. C.P.L.R. § 214(4)'s three-year limitations period for injury to property is more appropriate. *See* N.Y. C.P.L.R. § 214(4). But the gravamen of the statutory claim is not injury to a possessory interest in land; it is an intentional invasion of privacy undertaken to capture a plaintiff engaged in private activity. The Court therefore concludes that the limitations period for intentional torts is the more analogous New York limitations period.

New York treats invasion of privacy claims and other intentional torts as subject to CPLR 215(3)'s one-year limitations period. *See Kuang v. Zhou*, 180 N.Y.S.3d 900, 901 (N.Y. App. Div. 2023) ("[C]auses of action for the intentional torts of assault, battery, false imprisonment, malicious prosecution, defamation, and *invasion of privacy* . . . would be time-barred by the one-year statute of limitations applicable to those claims." (emphasis added) (citing N.Y. C.P.L.R. § 215(3))). Duress tolling and equitable estoppel cannot revive this claim for the same reasons they cannot revive Sapp's other intentional tort claims, *see supra* Section II.A.3. CPLR 215(3)'s one-year period therefore bars Count XII.[8]

Count XII independently fails on the pleaded statutory subsection. Section 1708.8(a) creates liability for a "physical invasion of privacy" where a "person knowingly enters onto the land or into the airspace above the land *of another person* without permission or otherwise commits a trespass." Cal. Civ. Code § 1708.8(a) (emphasis added). The Amended Complaint alleges covert recordings made inside Combs's own home and hotel rooms; it does not allege that Combs entered Sapp's land or airspace or otherwise committed a trespass to obtain the recording. *See* Am. Compl. ¶¶ 58-59, 145-46. Thus, Count XII independently fails on the pleaded statutory theory.

*7. Count XIII: Intrusion Upon Seclusion Under California Law*

Count XIII asserts a common law intrusion upon seclusion claim under California law based on Combs's alleged secret recordings of Sapp. *See id.* ¶¶ 151-57. That claim is ordinarily subject to a two-year statute of limitations. *See Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1069 (N.D. Cal. 2021) ("The statute of limitations for [an] intrusion upon seclusion . . . claim[] is

[8] Given Sapp's more than twelve year delay in filing suit, his claim would be untimely even if the Court instead applied N.Y. C.P.L.R. § 214(4)'s three-year limitations period for injury to property. *See supra* Section II.A.3.

two years." (citing Cal. Civ. Proc. Code § 335.1)). California's sexual-assault revival law may affect the California side of the CPLR 202 analysis if Sapp's privacy claim qualifies as a "related claim[]." Cal. Civ. Proc. Code § 340.16(e)(6). But it cannot eliminate the independent New York limitations requirement. "New York has consistently refused to recognize a common law right of privacy, and hence there is no cause of action of intrusion upon seclusion under New York law." *In re GEICO Customer Data Breach Litig.*, No. 21-cv-02210 (KAM) (SJB), 2023 WL 4778646, at *17 (E.D.N.Y. July 21, 2023), *report and recommendation adopted*, 691 F. Supp. 3d 624 (E.D.N.Y. 2023). Given that California's intrusion upon seclusion claim is an intentional tort, *see Kleiman v. Equable Ascent*, No. 12-cv-9729, 2013 WL 49754, at *3 (C.D. Cal. Jan. 3, 2013), the Court again finds that CPLR 215(3) supplies the applicable limitation period of one year, *see* N.Y. C.P.L.R. § 215(3). Under CPLR 202, Count XIII is therefore untimely under the New York statute of limitations and is not tolled under New York tolling doctrines. *See supra* Section II.A.3. The Court accordingly dismisses Count XIII as time-barred.

*8. Count XIV: Breach of Contract Under New York and California Law*

Count XIV alleges that Sapp "entered into agreements with Combs . . . to provide entertainment services . . . at a specified hourly rate," in exchange for Combs "compensate[ing] [him] for all hours worked at [that] rate." Am. Compl. ¶ 159; *see also id.* ¶¶ 158-63. The Court assumes that the alleged breaches occurred during the 2007 to 2012 course of dealings. *See id.* ¶¶ 69, 165. Under New York law, a breach of contract claim ordinarily must be commenced within six years. N.Y. C.P.L.R. § 213(2). Meanwhile, California applies different limitations periods depending on the form of the contract: four years for written, *see* Cal. Civ. Proc. Code § 337(a), and two years for oral contracts, *id.* § 339(1). Even the longest of these periods expired before Sapp commenced this action in 2025. The limitations period for Count XIV therefore

expired years before suit, and, like Sapp's other claims, cannot be extended through tolling. *See supra* Section II.A.3. Count XIV is dismissed as untimely.

*9. Count XV: Quantum Meruit/Unjust Enrichment Under New York and California Law*

Count XV seeks the reasonable value of entertainment services Sapp provided beyond the hours originally agreed to between him and Combs from approximately 2007 to 2012. *See* Am. Compl. ¶¶ 164-70. This claim is therefore based on the same facts as Sapp's breach of contract claim. *See id.* ¶¶ 158-63. Ordinarily, "[i]n New York, a plaintiff may plead unjust enrichment in the alternative, but where an unjust enrichment claim is duplicative of other causes of action, it should be dismissed." *Bourbia v. S.C. Johnson & Son, Inc.*, 375 F. Supp. 3d 454, 466 (S.D.N.Y. 2019).

Even if the Court did not dismiss Sapp's unjust enrichment claim as duplicative, it would nevertheless be time-barred. "Under New York law, there is no identified statute of limitations period within which to bring a claim for unjust enrichment, but where, as here, the unjust enrichment and breach of contract claims are based upon the same facts and pled in the alternative, a six-year statute of limitations applies." *Maya NY, LLC v. Hagler*, 965 N.Y.S.2d 475, 477 (N.Y. App. Div. 2013); *see also* N.Y. C.P.L.R. § 213(2) (providing for a six-year limitations period for contract claims). As discussed in Section II.B.8, tolling cannot render Sapp's claim timely under that limitations period.[9] Count XV is therefore dismissed.

---

[9] While not necessary to address, *see Overall*, 52 F.3d at 402, the Court observes that Count XV is also necessarily untimely under California law because California's limitations periods are shorter than those of New York. *See Maglica v. Maglica*, 78 Cal. Rptr. 2d 101, 106 (Cal. Ct. App. 1998) ("The statute of limitations for quantum meruit claims is two years." (citing Cal. Civ. Proc. Code § 339(1))), *as modified on denial of reh'g* (Sept. 28, 1998); *Wu v. Sunrider Corp.*, 793 F. App'x 507, 510 (9th Cir. 2019) ("A two-year statute of limitations applies to [an] unjust enrichment claim." (citing Cal. Civ. Proc. Code § 339(1))); *Fed. Deposit Ins. Corp. v. Dintino*, 84 Cal. Rptr. 3d 38, 50 (Cal. Ct. App. 2008) ("[A] three-year statute of limitations applies to an unjust enrichment cause of action based on . . . fraud or mistake." (citation omitted)).

### C. Count I: New York City's Victims of Gender-Motivated Violence Protection Law

This leaves Count I. Count I alleges that Combs violated the VGMVPL through crimes of violence motivated by gender occurring in New York City. *See* Am. Compl. ¶¶ 83-86. A claim under the VGMVPL ordinarily must be "commenced within seven years after the alleged crime of violence." N.Y.C. Admin. Code § 10-1105(a). Because the relevant conduct alleged here occurred no later than approximately 2012, *see* Am. Compl. ¶¶ 69, 165, Count I would be untimely under that seven-year period.

The New York City Council, however, amended § 10-1105 in 2022 to revive otherwise time-barred claims. The amendment created a two-year revival window for claims brought between March 1, 2023, and March 1, 2025. *See* N.Y.C. Admin. Code § 10-1105(a); N.Y.C. Local L. 21/2022. Plaintiff commenced this action on February 4, 2025, within that revival window. *See* Compl. Thus, if New York City's revival provision is valid and applicable, Count I is timely.

Combs argues that the revival provision is preempted by New York State's Child Victims Act ("CVA"), CPLR § 214-g, and Adult Survivors Act ("ASA"), CPLR § 214-j, which created earlier and differently timed revival windows for claims arising from sexual offenses. *See* Br. at 5-8. Federal district courts are divided on that question. *Compare Parker v. Alexander*, 779 F. Supp. 3d 361, 366-69 (S.D.N.Y. 2025) (finding conflict and field preemption), *with Doe v. Black*, No. 23-cv-06418 (JGLC), 2024 WL 4335453, at *3-7 (S.D.N.Y. Sept. 27, 2024) (rejecting preemption).

On March 23, 2026, the Second Circuit concluded that the dispute presented an unsettled and important question of New York law and certified to the New York Court of Appeals the following question: whether the VGMVPL's two-year revival window "is preempted by the

earlier revival periods set forth in [the CVA] and [ASA]." *Parker v. Alexander*, 171 F.4th 146, 147 (2d Cir. 2026). The New York Court of Appeals accepted the certified question on April 16, 2026. *See Parker v. Alexander*, 278 N.E.3d 441 (N.Y. 2026). The answer from the Court of Appeals will determine whether Sapp may rely on the 2022 revival provision at all.

Considering these developments, the Court declines to exercise supplemental jurisdiction over Count I. A district court "may decline supplemental jurisdiction" where "the claim raises a novel or complex issue of State law." 28 U.S.C. § 1367(c)(1). The Second Circuit has emphasized that where, as here, a supplemental claim presents an unresolved question of state law implicating significant state interests, that question is appropriately left to the state courts. *See Carver v. Nassau Cnty. Interim Fin. Auth.*, 730 F.3d 150, 154-55 (2d Cir. 2013). Indeed, in *Carver*, the Second Circuit held that "[i]t [wa]s enough" that the claim "raise[d] an unresolved issue of state law" that "should be resolved by the New York state courts," and directed the district court to dismiss the claim rather than decide an important question of state law in the first instance. *Id.* at 154-55; *see also Seabrook v. Jacobson*, 153 F.3d 70, 72-73 (2d Cir. 1998) (concluding that district court should not have exercised supplemental jurisdiction where the state law claim "present[ed] not only a novel question of interpretation of a state statute, but one that involve[d] the state's interest in the administration of its government").

The considerations favoring dismissal without prejudice are particularly strong here. All other claims have been dismissed in this case. With respect to Count I, the Second Circuit has expressly determined that the preemption question presented is sufficiently unsettled and important to warrant certification to the New York Court of Appeals, and that court has accepted the question for decision. *Parker*, 171 F.4th at 147; *Parker*, 278 N.E.3d at 441. Because resolution of the issue by New York's highest court is therefore already underway, considerations of convenience, fairness, and comity weigh strongly against this Court predicting

how the New York Court of Appeals will resolve the question in the interim. *See Richard*, 2026 WL 1718089, at *14 (declining supplemental jurisdiction over a VGMVPL claim after observing that the Second Circuit had certified the same preemption question in *Parker*). Accordingly, pursuant to 28 U.S.C. § 1367(c)(1), the Court declines to exercise supplemental jurisdiction over Count I, which is dismissed without prejudice to filing in state court.

**CONCLUSION**

For the foregoing reasons, Combs's motion to dismiss is GRANTED. Counts II through XV are dismissed as untimely, and Count XII is also dismissed for failure to plead the elements of California Civil Code § 1708.8(a). The Court declines to exercise supplemental jurisdiction over Count I, which is dismissed without prejudice.

Additionally, at Plaintiff's instruction, *see* Tr. at 3:7-16, all claims against Defendants Doe Corporations 1-10 and Doe Defendants 11-20 are dismissed.

The Clerk of Court is respectfully directed to terminate the motion at Dkt. 60, and CLOSE this case.

Dated: September 18, 2026
New York, New York

SO ORDERED.

Jennifer Rochon

JENNIFER L. ROCHON
United States District Judge